IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| CANOO INC. *et al.*,[1] | Case No. 25-10094 (BLS) |
| Debtors. | (Jointly Administered) |
| | **Objection Deadline: March 28, 2025 at 5:00 p.m.** <br> **Hearing Date: April 2, 2025 at 10:00 a.m.** |

**CHAPTER 7 TRUSTEE'S MOTION FOR ENTRY OF AN ORDER:
APPROVING ASSET PURCHASE AGREEMENT PURSUANT TO 11 U.S.C. § 363
AND (B) GRANTING RELATED RELIEF**

Jeoffrey L. Burtch, solely in his capacity as chapter 7 trustee (the "Trustee") for the bankruptcy estates (the "Estates") of the above-captioned debtors (the "Debtors"), hereby files this motion (the "Motion") pursuant to 11 U.S.C. §§ 105, 363, and 365 for entry of an order approving the Asset Purchase Agreement substantially in the form attached as Exhibit "A" hereto, and granting related relief. In support of the Motion, the Trustee respectfully states as follows:

**JURISDICTION, CORE NATURE AND VENUE**

1.  The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.  The statutory predicates for the relief requested herein are sections 105, 363, and 365 of title 11 of the United States Code (the "Bankruptcy Code"), and Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure.

3.  Pursuant to Local Rule 9013-1(f), the Trustee consents to the entry of a final order

---

[1] The Debtors in these cases are the following entities (the respective case numbers for each estate follows in parentheses): Canoo, Inc. (25-10094 BLS); EV Global Holdco LLC (25-10095 BLS); EV US Holdco Inc., (25-10096 BLS); Canoo Technologies Inc. (25-10099 BLS); Canoo Manufacturing, LLC (25-10097 BLS); and Canoo Sales, LLC (25-10098 BLS.

with respect to this Motion if it is determined that the Court lacks adjudicatory authority under Article III of the United States Constitution to enter such final order absent consent of the parties.

## BACKGROUND

4.  On January 17, 2025 (the "Petition Date"), the Debtors filed voluntary petitions with the Court for relief under chapter 7 of the Bankruptcy Code, commencing the above-captioned bankruptcy cases. On or about the Petition Date, the Office of the United States Trustee appointed the Trustee as the interim trustee for the Estates of the Debtors. The Section 341 Meeting of Creditors was held and concluded on February 26, 2025. The Trustee now serves as the trustee for these cases pursuant to section 702(d) of the Bankruptcy Code.

5.  Prior to the Petition Date, the Debtors were an automotive technology company that manufactured custom-built electric cargo vehicles for large commercial, government, and fleet customers globally. The Debtors ceased all operations as of the Petition Date, and the Trustee is not operating the business.

## DEBTORS' BUSINESS AND PROPOSED SALE

6.  As part of their pre-petition operations, the Debtors were a development stage American automotive company that developed and manufactured electric vehicles. As part of the Debtors' limited prepetition operations, they possessed significant machinery and equipment on sites located in Texas, Oklahoma and California.

7.  Shortly after the Petition Date, the Trustee's counsel was contacted by the Debtors' former chief executive officer Anthony Aquila ("Aquila") regarding the purchase of substantially all of the Debtors' assets.

8.  Aquila, through an entity that he controls, WHS Energy Solutions, Inc. ("Buyer"), has made an offer for a substantial portion of the Estates' assets. After arm's length negotiations,

and the exchange of multiple counter offers, the Trustee and Buyer reached an agreement and entered into the Asset Purchase Agreement (the "APA"), which is annexed hereto as Exhibit A and incorporated herein by reference.

## TERMS OF THE APA

9. The principal terms of the APA are summarized as follows:

| Agreement Provision | Summary Description |
| --- | --- |
| Seller | Jeoffrey L. Burtch, solely in his capacity as chapter 7 trustee for the bankruptcy estates of the Debtors. |
| Buyer | WHS Energy Solutions, Inc.[2] |
| Consideration | a) the Credit Bid[3]; <br> b) $4,000,000.00 cash, consisting of $500,000.00 in consideration of the Buyer Preference Claims and $3,500,000.00 for all other Purchased Assets; <br> c) Assumption by the Buyer of the Assumed Liabilities. <br> (*See* APA at Section 2.5) |
| Purchased Assets | All of the Estates' right, title, and interest in and to the following on an "as is-where is" basis without representation or warranty of any kind or nature: <br> a) all tangible personal property, including, without limitation, all of Debtors' or the Estates' machinery and tools (whether completed or in progress), computers, equipment, vehicles, trailers and any other titled assets, equipment, supplies, and telephones; <br> b) all Intellectual Property; <br> c) all intangible property rights, including without limitation, all of the Debtors' or the Estates' telephone numbers, fax numbers, e-mail addresses, websites, URLs, Internet domain names, corporate names and social media accounts or "handles" relating in any manner to the Purchased Assets; <br> d) all rights and interests under easements, rights-of-way and other instruments creating similar rights; <br> e) all Governmental Approvals and Permits owned or possessed, but only to the extent such Governmental Approvals and Permits may be transferred under applicable Law; <br> f) all Assumed Contracts; <br> g) all security or similar deposits paid or otherwise held in respect of any Assumed Contract; |

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the APA.
[3] The Lender, also an affiliate of Aquila, has assigned its claim to Buyer and Buyer now holds all rights to the claim of Lender as set forth on Schedule D of the Debtors' Schedules.

| Agreement Provision | Summary Description |
|---|---|
| | h) all Records, including Records related to Taxes paid or payable relating in any manner to the Purchased Assets (<u>provided</u> that the Seller is entitled to retain copies of all Records and the Buyer will provide all such Records to the Seller at no charge), but excluding any materials exclusively related to any Excluded Assets;<br>i) all goodwill associated with the Purchased Assets, including goodwill associated with the Intellectual Property owned by the Estates or the Debtors and all rights under any confidentiality agreements executed by any third party for the benefit of the Estates or the Debtors to the extent relating to the Purchased Assets or the Assumed Liabilities (or any portion thereof), but excluding any confidentiality agreements relating solely to the retention of professionals by the Estates;<br>j) all rights under or pursuant to all warranties, representations, and guarantees made by suppliers, manufacturers, contractors, and any other Person to a Debtor or an Estate relating to any Purchased Asset or any Assumed Liability;<br>k) 10% of any Net Harbinger Recovery;<br>l) the Foreign Subsidiary Equity Interests;<br>m) the Buyer Preference Claims (only to the extent that the individual or entity receiving such transfers waive any claims against the Estates);<br>n) all inventory; and<br>o) all other assets in connection with, relating to or necessary for, or used in the operation of, the Purchased Assets (but, for the avoidance of doubt, excluding the Excluded Assets).<br>(*See* APA Section 2.1) |
| Excluded Assets | a) all bank or other accounts of the Seller, Debtors, or Estates, including Debtors' cash collateral account securing Debtors' obligations to Silicon Valley Bank pursuant to a letter of credit issued by such bank;<br>b) all cash and cash equivalents of the Seller, Debtors, or Estates;<br>c) all accounts receivable of the Seller, Debtors, or Estates reflected on the Seller's, such Debtor's or such Estate's books and records on or before the Closing Date, including, for the avoidance of doubt, any proceeds of the auction of Debtors' property conducted on February 6, 2025 by Bid-it-Up;<br>d) all rights arising from, in respect of, or relating to any refunds due from federal, state, or local Governmental Entities with respect to Taxes of the Seller, Debtors, or Estates;<br>e) all proceeds, reserves, benefits, rebates, rights, or claims under any Insurance Policy (provided that (i) the rights of individual beneficiaries to make claims under the Debtors' directors' and officers' liability insurance policy shall not be abridged or |

| Agreement Provision | Summary Description |
|---|---|
| | restricted and (ii) the rights and benefits of pre-paid bonds in place to guarantee performance under any Assumed Liability shall not be an Excluded Asset);<br>f) all Leases and Contracts, other than the Assumed Contracts;<br>g) all claims and causes of action (and proceeds thereof), including those in connection with or under Chapter 5 of the Bankruptcy Code or similar state laws, and including those against former directors or officers of the Debtors (other than the Buyer Preference Claims); subject, in the case of the Harbinger Matter, to Section 2.1(k) and Section 7.3 of the APA;<br>h) all Equity Interests issued by a Debtor that are held or owned by another Debtor (not including, for the avoidance of doubt, the Foreign Subsidiary Equity Interests);<br>i) a copy of all Records necessary to wind up the Estates;<br>j) assets subject to the Top Hat Warehousing and License Agreement; and<br>k) the rights, defenses, claims and causes of action of the Seller, Estates and Debtors under this Agreement and the Related Agreements and all consideration payable or deliverable to Seller under this Agreement.<br>(*See* APA Section 2.2) |
| Sale Order | The APA requires entry of the Sale Order approving the sale free and clear of liens and encumbrances. |

10. As part of the APA's consideration, Buyer is offering a credit bid. The Debtors are parties to a certain Revolving Credit Agreement, dated as of November 5, 2024, (as amended, the "Revolving Credit Agreement") under which AFV Management Advisors, LLC, an affiliate of the Buyer ("AFV") provided certain financing to the Debtors, allegedly secured by a first priority lien on the Debtors' assets. The Debtors' Schedule D lists the secured indebtedness to AFV at over $11 million. As noted above, AFV has assigned all rights to their claim to the Buyer. In addition, the Buyer is agreeing to assume the Asset Removal Costs, which the Buyer has estimated at $2,314,982.00 for removing the Debtors' assets and cleaning up hazardous materials at certain leased facilities which the Buyer is not assuming.

11. The APA also includes cash consideration in the amount of $4,000.000.00 (the "Cash Consideration"). The Cash Consideration includes $500,000.00 as consideration of the Buyer's purchase of the Buyer Preference Claims. As defined in the APA, the Buyer Preference Claims include any and all claims that could be asserted by or on behalf of any Debtor pursuant to Section 547 of the Bankruptcy Code or any analogous State Law for the transfers expressly set forth in the Debtors' Statements of Financial Affairs against certain potential insiders of the Debtors (the "Potential Insiders"). The Trustee has analyzed the transfers made in the one-year period prior to the Petition Date as included on the Debtors' Statements of Financial Affairs to the Potential Insiders, and has determined that the consideration offered for the Buyer Preference Claims is reasonable. Even though the Debtors' Schedules show over $6 million in such transfers, the Trustee believes that, when coupled with the costs and risks associated with litigating such claims, there are significant defenses available to the Potential Insiders that would erode any potential recovery. Therefore, the Trustee believes in his business judgment that the $500,000.00 consideration for the Buyer Preference Claims is reasonable.

12. The Trustee favors proceeding by way of private sale. The Buyer has submitted an offer that appears superior to any other offer that the Trustee might reasonably expect, if any other offer were to be made. Under these circumstances, the Trustee believes that his best course of action is to proceed by way of a private sale to the Buyer subject to any higher and better offers that might be made by the objection deadline, and to provide notice of the sale to parties in interest.

13. Concurrent with this sale process, the Trustee is engaging Hilco Valuation Services, LLC ("Hilco") to opine as to the liquidation value of the Debtors' machinery and equipment and Intellectual Property, subject to Court approval. Hilco's appraisal will provide the Trustee with the requisite professional opinion of the value of the machinery and equipment and Intellectual

Property which are the principal assets to be sold hereunder. Furthermore, while the APA includes the Buyer's purchase of certain contracts and related deposits, the parties have specifically excluded the $30 million deposit to Panasonic Corporation of North America and any recovery from the cash collateral account securing the letter of credit in favor of the landlord of the Debtors' former premises in Arkansas from the Purchased Assets. When taken as a whole, the Trustee believes the consideration offered by the Buyer represents a fair and prudent outcome, while maximizing the value of the Purchased Assets for the Estates.

14.    Since the Petition Date, the Trustee has diligently evaluated strategies for maximizing the value of the Estates' assets in the context of the current economic environment. Following numerous discussions with the Debtors' principals, the Trustee understands that in the last twelve months multiple major electric vehicle ("EV") companies have collapsed into bankruptcy owing to their inability to raise financing necessary to build out their operations, lack of sales, the high costs of raw materials and the changing of certain political tides. These pitfalls have generated a glut of EV related assets, particularly generic machinery adaptable for other uses, available at fire-sale prices.

15.    The Debtors' were a development stage business and accordingly the Debtors' assets consist principally of highly customized tools and machinery engineered to produce unique components of prototype EVs and battery storage systems and related intellectual property, generic machinery, batteries and battery components, and facilities leased at market rates. The Debtors' revenue producing contracts to sell finished vehicles require the investment of hundreds of millions of dollars to build-out the manufacturing capability to produce salable quantities of prototypes. The Debtors were unable to raise the necessary capital to do so. Shortly before entering chapter 7, the Debtors terminated all employees other than a skeletal staff. Accordingly, coupled with the

lack of financing currently available to support EV manufacture, the Trustee does not believe that it is feasible to try to sell the Debtors' business as a going concern through a traditional marketing program.

16. The administrative cost of maintaining the Debtors' assets is enormous particularly compared to the anticipated value that can be recovered from the sale or liquidation of the assets. As noted in the Debtors' Schedules, the principal facilities at which the Debtors' assets were housed are leased with rent payments already significantly in arrears at the time the Debtors entered chapter 7. Many of the assets themselves, especially batteries and battery components, are fragile and subject to corrosion rendering them valueless particularly when exposed to extreme cold. The Estates do not have the financial resources to continue paying the rents, security costs, and insurance necessary to maintain the integrity of the assets for more than a short period in their current locations, and the Trustee needs to be able to reject the leases promptly unless a buyer, such as the Buyer, is willing to assume the cure costs of any leases retained as well as the costs of removal of the Debtors' assets from leased premises which are not being assumed. In addition, a substantial portion of the Debtors' customized tools are currently in the possession of the Debtors' vendors. The cost of monitoring and recovering such tools and the related intellectual property from vendors will be substantial with the likely alternative being for the Trustee to abandon them. Already, the Trustee has received inquiries from numerous entities seeking permission to scrap such assets as well as a notice of motion to terminate relevant insurance for failure to pay premiums. In addition, the Debtors' premium finance company has filed a motion for relief from stay to terminate the Debtors' insurance policies. The cost to continue the insurance is over $300,000 per month. The Estates simply do not have the financial resources to pay for insurance, rent and security necessary to run a more fulsome sale process.

17. A principal motivation of the Buyer is the desire to honor the Debtors' commitment to provide service and support for certain government programs. Debtors' recently received a "letter of success" from the Department of Defense noting successful completion of two out of three phases of the project .While the viability of all government spending is currently uncertain, the Buyer has been advised by these agencies that unless they can be assured that the Buyer can provide assurance promptly that it will be able to continue to provide the services and support provided by the Debtors, the programs will be materially delayed and the government will have to begin the time-consuming process of seeking and qualifying other contractors. For all of these reasons, the Trustee believes that a somewhat expedited sale as contemplated herein is in the best interests of the Estates and their creditors.

**Assumption and Assignment of Executory Contracts and/or Unexpired Leases**

18. In conjunction with the sale, the Trustee will seek to assume and assign to the Buyer the Assumed Contracts.

19. Within three (3) business days after the filing of this Motion, and promptly after the Buyer identifies additional contracts it wishes to designate as Assumed Contracts, the Trustee will file and serve upon counterparties to the Assumed Contracts (the "Counterparties") a notice substantially in the form attached hereto as Exhibit "B" (the "Cure Notice"), informing the Counterparties that the Debtors' executory contracts and unexpired leases may be assumed and assigned, and setting out what the Debtors' records show to be the applicable cure amounts, if any (the "Cure Amounts"). Up until 10 days prior to the Sale Hearing [March 22, 2025] the APA permits the Buyer to designate contracts which it wishes to have treated as Assumed Contracts, and also to identify contracts which it may wish to assume as Provisionally Designated Contracts. The Trustee will not reject any Provisionally Designated Contracts provided that the Buyer pays

for the incremental cost, if any, caused by the delay in rejection, and provided further that unless the Buyer elects to treat the Provisionally Designated Contract as an Assumed Contract on or before the thirtieth day following the Closing, the Trustee may reject such Provisionally Designated Contract. The Trustee will send Cure Notices to the counterparties of such Assumed Contracts promptly after they are so identified in writing by the Buyer. The counterparties shall have 21 days from service of the Cure Notice in which to object to the assumption or Cure Amount, and if no such objection is received, the contract shall become an Assumed Contract.

20. All objections to the relief sought through the Motion, including objections to the Cure Amounts and objections to the proposed assumption and assignment of the agreements identified in any bid, must: (i) be in writing; (ii) state with specificity the nature of such objection (with appropriate documentation in support thereof); (iii) comply with the Bankruptcy Rules and the Local Rules; (iv) be filed with this Court and served upon (so as to be received by) the Service Parties (A) on or before the deadline to object to this Motion, or (B) in the case of a contract identified as an Assumed Contract after March 7, 2025, not later than 21 days following the mailing of a Cure Notice.

21. A party failing to file and serve a timely objection to the Cure Amounts and/or the Trustee's assumption and assignment of any executory contract or unexpired lease shall be forever barred from objecting to the Cure Amounts and/or assumption and assignment, and will be deemed to consent to the Cure Amounts and/or assumption and assignment. In the event that timely objection to the Cure Amounts and/or assumption and assignment of any executory contract or unexpired lease is filed, and the parties are unable to consensually resolve the dispute, such objection will be determined at the hearing currently scheduled for consideration of the Motion, or such other date and time as may be fixed by this Court.

## LOCAL RULE 6004-1(b) PROVISIONS

22. The APA contains the following terms, conditions and provisions that are to be highlighted in this Motion pursuant to Local Rule 6004-1(b):

    a) **Sale to Insider**. The Buyer is controlled by Aquila, the former chief executive officer of the Debtors.

    b) **Releases.** As discussed herein, Buyer is purchasing the Buyer Preference Claims, but there are no releases in the APA.

    c) **Private Sale**. While no auction or competitive bidding process is explicitly contemplated, the Trustee will consider any competing offers that might be made by no later than the deadline for objections to this Motion.

    d) **Closing Deadline**. The APA requires that the Sale is closed no later than April 14, 2025.

    e) **Record Retention**. The APA specifically excludes all records necessary for the Trustee to administer the Estates. Furthermore, while the APA includes certain records as Purchased Assets, Buyer has agreed to provide the Trustee with all such records at no charge.

    f) **Sale of Avoidance Actions**. The APA includes the sale of the Buyer Preference Claims, as discussed herein.

    g) **Credit Bid**. As part of the consideration for the Contemplated Transactions, the Buyer is credit bidding the claim assigned to it from AFV.

    h) **Relief from Fed. R. Bankr. P. 6004(h)**. The Parties request that the Order waive Rule 6004(h) to allow the Sale to close no later than April 14, 2025.

## SUMMARY OF RELIEF REQUESTED

23. By this Motion, the Trustee seeks the entry of the Sale Order to be filed prior to the objection deadline: (a) approving and authorizing the sale of the Purchased Assets free and clear of liens, claims, interests, and encumbrances; (b) authorizing and approving the APA; and (c) granting certain related relief.

## ANALYSIS

A.   **The Trustee requests authority to sell the Property outside of the ordinary course of business.**

24.   Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." Courts have held that proposed sales of property pursuant to section 363(b) should be approved upon a finding that the decision to enter into the transaction represents a reasonable business judgment. *See, e.g., In re Delaware & Hudson Ry. Co.,* 124 B.R. 169, 176 (Bankr. D. Del. 1991) (holding that a court must be satisfied that there is a "sound business reason" justifying sale of assets); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335 (Bankr. D. Del. 1987) (stating that the elements necessary for approval of a section 363 sale are "that the proposed sale is fair and equitable, that there is a good business reason for completing the sale and the transaction is in good faith"). Further, sales of property outside of the ordinary course of business may be by private sale, as opposed to public auction. *See* Bankruptcy Rule 6004(f)(1).

25.   The consideration is the result of good faith, arm's length negotiations, and, based on communications with various parties in interest, the Trustee believes that the Consideration is reasonable. No other offers have been received for the Purchase Assets.

26.   As noted above, as an additional test of the fairness of the APA, the Trustee will consider additional proposals for the Purchased Assets through the date by which objections to this Motion are due. If an additional proposal is received by the Trustee in writing on or before the objection deadline that the Trustee determines to be higher and better than that under the APA, the Trustee will confer with the potential purchasers and use the hearing date on the Motion as a status conference to report to the Court on the status of competing offers and his proposed

procedure to conduct a prompt auction, and return to Court after the auction to approve the sale to the bidder submitting the highest and best offer for the Purchased Assets.

27. If no additional bids are received by the Trustee, then he will proceed with the hearing as scheduled and request that the Court approve the APA for the reasons set forth above.

**B.  The Trustee requests that the sale be free and clear of all liens, claims, rights, and encumbrances.**

28. Section 363(f) of the Bankruptcy Code provides:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if -
>
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in a bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

29. Section 363(f) is drafted in the disjunctive. Thus, satisfaction of any one of the elements would permit sale of the Purchased Assets free and clear of all liens, claims, rights, and encumbrances (collectively, "<u>Interests</u>"), *See, e.g., Citicorp Homeowners Servs., Inc. v. Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988).

30. To the extent there are any Interests encumbering the Purchased Assets, the Trustee believes that, as to each and every entity or person having any such Interest in the Property, at least one of the five criteria set forth in section 363(f) of the Bankruptcy Code will apply.

31. Applicable caselaw provides that a trustee may sell a debtor's assets free and clear of all Interests, with all Interests attaching to the net proceeds of the sale. *See, e.g., Folger Adam*

*Security, Inc. v. DeMatteis/MacGregor, JV*, 209 F.3d 252, 259 (3d Cir. 2000) ("[T]he holdings of the courts suggest that any interest in property that can be reduced to a money satisfaction constitutes a claim for purposes of section 363(f) and, therefore, attaches to the proceeds of the sale."); *In re WPRV-TV, Inc.*, 143 B.R. 315, 321 (D.P.R. 1991); *Citicorp Homeowners*, 94 B.R. at 345.

32. To the extent that the Court determines that Interests exist that would not be extinguished as described above, the Trustee submits that holders of any such Interests should be deemed to have waived their rights if they fail to object to this Motion. *See, e.g., Folger Adam*, 209 F.3d at 265. As the United States Court of Appeals for the Third Circuit recognized, "Due Process requires 'notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)).

33. Moreover, the Trustee expects that any holders of Interests that may exist will consent or be deemed to have consented to the sale, given that the sale protects their Interests by maximizing the value of the Purchased Assets, and all Interests will attach to the net proceeds of the sale. The Trustee therefore anticipates that the sale will satisfy the second element of section 363(f). *See, e.g., Hargrave v. Township of Pemberton (In re Tabone, Inc.)*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (by not objecting to sale motion, secured creditor deemed to have consented under section 363(f)(2)); *Pelican Homestead & Sav. Ass'n v. Wooten (In re Gabel)*, 61 B.R. 661, 667 (Bankr. W.D. La. 1985) (same).

34. Accordingly, the Trustee requests that the Court declare that the transfer of the Purchased Assets to the Buyer will be free and clear of all Interests to the fullest extent permitted under section 363(f) of the Bankruptcy Code, with Interests attaching to the proceeds of the sale.

14

**C.      The Buyer Should Receive the Protections of Section 363(m) of the Bankruptcy Code.**

35.     Pursuant to section 363(m) of the Bankruptcy Code, a good faith purchaser is one who purchases assets for value, in good faith, and without notice of adverse claims. *See In re Mark Bell Furniture Warehouse, Inc.*, 992 F.2d 7, 9 (1st Cir. 1993); *In re Willemain v. Kivitz*, 764 F.2d 1019, 1023 (4th Cir. 1985); *In re Congoleum Corp.*, No. 03-51524, 2007 WL 1428477, at *2 (Bankr. D.N.J. May 11, 2007).

36.     As noted throughout, the Buyer has negotiated at arm's length, and all parties were represented by their own counsel. Accordingly, the Sale Order includes a provision that the Buyer is a "good faith" purchaser within the meaning of section 363(m) of the Bankruptcy Code.

**D.      The Assumption and Assignment of the Executory Contracts and/or Unexpired Leases Should Be Approved.**

37.     Section 365(a) of the Bankruptcy Code provides that a trustee, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." The standard governing bankruptcy court approval of a trustee's decision to assume or reject an executory contract or unexpired lease is whether the trustee's reasonable business judgment supports assumption or rejection. *See, e.g., Sharon Steel Corp.*, 872 F.2d 36, 39-40 (3d Cir. 1989); *In re Stable Mews Assoc., Inc.*, 41 B.R. 594, 596 (Bankr. S.D.N.Y. 1984).  The business judgment test "requires only that the trustee demonstrate that [assumption or] rejection of the executory contract will benefit the estate." *Wheeling-Pittsburgh Steel Corp. v. W. Penn Power Co. (In re Wheeling-Pittsburgh Steel Corp.)*, 72 B.R. 845, 846 (Bankr. W.D. Pa. 1987) (*quoting Stable Mews Assoc.*, 41 B.R. at 596).  Any more exacting scrutiny would hinder the administration of the estate and increase costs.  *See Richmond Leasing Co. v. Capital Bank N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985).

38. In order to assign an executory contract, a trustee must first assume it. In order to assume a contract, a trustee must "cure, or provide adequate assurance that [he] will promptly cure," any default, including compensation for any "actual pecuniary loss" relating to such default. 11 U.S.C. § 365(b)(1). Here, the Trustee proposes to circulate the Cure Notice to the Counterparties within three (3) days following the filing of this Motion, which will provide Counterparties with sufficient opportunity to assess the Trustee's proposed Cure Amounts and assert any objections.

39. Once an executory contract is assumed, the trustee may then seek to assign the contract. Pursuant to section 365(f) of the Bankruptcy Code, a trustee may assign an assumed contract only if "adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease." 11 U.S.C. § 365(f)(2). The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." *See Carlisle Homes. Inc. v. Arrari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1989); *see also In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate assurance of future performance does not mean absolute assurance that the debtor will thrive and pay rent). Among other things, adequate assurance may be given by demonstrating the assignee's financial health and wherewithal to manage the type of enterprise or property assigned. *See In re Bygaph, Inc.,* 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance is present when prospective assignee of lease from the debtor has financial resources and has expressed willingness to devote sufficient funding to business in order to give it strong likelihood of succeeding).

**E.    Relief from Bankruptcy Rule 6004(h) is Warranted.**

40.     Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." The Trustee requests that the Court waive this 14-day stay, and that the Sale Order be effective immediately.

41.     The purpose of Rule 6004(h) is to provide sufficient time for an objecting party to appeal before an order can be implemented. *See Advisory Committee Notes to Fed. R. Bankr. P. 6004(h)*. Although Rule 6004(h) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and waive the 14-day stay, the leading bankruptcy treatise suggests that the fourteen day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." 10 COLLIER ON BANKRUPTCY 15th Ed. Rev., ¶ 6004.10 at 6004-18 (L. King, 15th rev. ed. 2008). The treatise further suggests that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal.

42.     As described above, time is of the essence. The Debtors have ceased all operations, and the maintenance of the Purchased Assets will be costly for the Estates. The Estates do not have sufficient funds to secure, maintain and insure the Purchased Assets beyond the contemplated time frame for this sale process. The Trustee needs to move as expeditiously as possible in order to prevent a deterioration in value of the Estates' assets. Consequently, a waiver of the Bankruptcy Rule 6004(h) stay is in the Estates' best interest.

**F.    The Trustee requests that his proposed notice be deemed adequate.**

43.     Under Bankruptcy Rule 2002(a) and (c), the Trustee is required to notify creditors of the terms and conditions of the sale and the objection deadline. The Trustee respectfully submits

that this Motion, which contains the type of information required under Bankruptcy Rule 2002(c), will enable interested parties to participate in the sale hearing if they so choose.

44. The Trustee shall promptly serve a copy of the Motion, including all attachments, by first-class United States mail, upon: (a) the Office of the United States Trustee; (b) counsel for Debtors; (c) the Buyer; (d) counterparties to the Assumed Contracts; (e) all parties who filed proofs of claims in Debtors' cases; (f) any creditors identified as secured in the Debtors' schedules; (g) all parties known to the Trustee to have expressed any interest in purchasing any assets of the Estates; and (h) all parties in interest who requested notice pursuant to Bankruptcy Rule 2002.

45. The Trustee submits that this notice constitutes good and adequate notice, and respectfully submits that no further notice is necessary.

## No Prior Request

46. No prior request for the relief sought herein has been requested from this Court or any other court.

[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]

**Conclusion**

WHEREFORE, the Trustee respectfully requests that the Bankruptcy Court enter the Sale Order (to be filed prior to the objection deadline mentioned above): (a) approving and authorizing the Sale of the Purchased Assets free and clear of liens, claims, interests, and encumbrances; (b) authorizing and approving the APA; and (c) granting certain related relief and such other relief as the Bankruptcy Court may deem appropriate.

Dated: March 4, 2025

COZEN O'CONNOR

*/s/ Mark E. Felger*
Mark E. Felger (DE 3919)
Gregory F. Fischer (DE 5269)
1201 N. Market Street, Suite 1001
Wilmington, DE 19801
T: (302) 295-2000
mfelger@cozen.com
gfischer@cozen.com

*Counsel to Jeoffrey L. Burtch, Chapter 7 Trustee*