IN THE UNITED STATES BANKRUPTY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>CANOO, INC., *et al.*,[1]<br><br>Debtors. | Chapter 7<br><br>Case No. 25-10094 (BLS)<br><br>(Jointly Administered)<br><br>Hearing Date: 4/2/25 @ 10:00 a.m. (ET)<br>Obj. Deadline: 3/28/25 @ 5:00 p.m. (ET)<br><br>Re: D.I. 51 |

**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF THE HANOVER INSURANCE COMPANY REGARDING THE CHAPTER 7 TRUSTEE'S MOTION FOR AN ORDER APPROVING ASSET PURCHASE AGREEMENT [DKT. NO. 51]**

The Hanover Insurance Company ("Hanover"), by and through its undersigned counsel, hereby files this Limited Objection to and Reservation of Rights Regarding the Chapter 7 Trustee's Motion (the "APA Motion", Dkt. No. 51) for the entry of an order, *inter alia,* approving a proposed Asset Purchase Agreement (the "APA", filed as Dkt. No. 51-1), and respectfully states as follows:

**INTRODUCTION**

1. As set forth below, Hanover has extended surety credit to three Debtors by executing certain surety bonds (hereinafter, the "Bonds") on their behalves.

2. Although Hanover does not in general oppose the APA Motion, it is concerned that certain ambiguous language in the APA might be (wrongfully) construed to suggest that the Bonds might constitute Purchased Assets. [2] Hanover is therefore requesting that the Sale Order include language clarifying, among other things, that the Bonds are not Purchased Assets.

---

[1] The Debtors in these cases are the following entities (the respective case numbers for each estate follows in parentheses): Canoo, Inc. (25-10094 BLS); EV Global Holdco LLC (25-10095 BLS); EV US Holdco Inc., (25-10096 BLS); Canoo Technologies Inc. (25-10099 BLS); Canoo Manufacturing, LLC (25-10097 BLS); and Canoo Sales, LLC (25-10098 BLS).

[2] Unless specified otherwise, capitalized terms used herein shall be afforded the meaning ascribed to them in the APA (Dkt. No. 51-1).

3. Hanover's Bonds *cannot* be Purchased Assets. Surety bonds are non-assumable financial accommodations under 11 U.S.C. § 365(c)(2) and, therefore, cannot be assumed and assigned without the consent of the surety that executed the bonds. Hanover has not given such consent. Additionally, any assumption and assignment of Hanover's Bonds would result in the improper substitution of the Buyer (or another third party) as the principal on the Bonds, thus rendering the Bonds null and void.

4. Accordingly, in an abundance of caution, and out of a concern that the APA might be construed to permit the impermissible, Hanover submits this limited objection.

## BACKGROUND

5. On January 17, 2025, the Debtors filed separate voluntary petitions for relief under Chapter 7 of Title 11, United States Code (the "Bankruptcy Code").

6. The APA Motion states that Debtors "were an automotive technology company that manufactured custom-built electric cargo vehicles for large commercial, government, and fleet customers globally." Dkt. No. 51 at ¶ 5.

7. The APA Motion further states that "Debtors ceased all operations as of the Petition Date, and the Trustee is not operating the business." Id.

8. In connection with the Debtors' former business operations, Hanover extended surety credit to the following Debtors ("Principal-Debtors") by executing the following surety bonds on their behalves:

| Bond No. | Principal-Debtor | Obligee | Bond Type | Penal Sum |
|---|---|---|---|---|
| 1085353 (Ex. A) | Canoo Technologies, Inc. | People of the State of California | Dealer Surety Bond (Motor Vehicles) | $50,000.00 |

{00040939. }                                                    2

| 1029546 (Ex. B) | Canoo Sales, LLC | People of the State of California | Dealer Surety Bond (Motor Vehicles) | $50,000.00 |
|---|---|---|---|---|
| 1081699 (Ex. C) | Canoo, Inc. | United States Department of Interior, National Park Service | License or Permit Bond (Vehicle Testing Near Death Valley National Park) | $5,000.00 |

9. Copies of the Bonds are attached hereto as **Exhibits A through C**.

10. To induce Hanover to execute the Bonds, the Principal-Debtors executed certain bond applications and indemnity agreements ("Indemnity Agreements"). In relevant part, the Indemnity Agreements (and common law principles of suretyship) obligate the Principal-Debtors to, among other things, indemnify Hanover for losses, costs, and expenses incurred by Hanover as a result of executing the Bonds.

11. On March 4, 2025, the Chapter 7 Trustee filed the APA Motion. Dkt. No. 51.

12. In general, the APA would effectively transfer all Purchased Assets to the Buyer.

13. "Purchased Assets", as defined in the APA, include "all of the Estates' or the Debtors' right, title, and interest in, and all rights, properties, and assets of the Estates of the Debtors . . . other than the Excluded Assets . . . [.]" Dkt. No. 51-1 (APA), § 2.1.

14. The "Excluded Assets" include:

> all directors and officers liability policies, and all proceeds, reserves, rights, or claims under any Insurance Policy[3] (provided that (i) the rights of individual beneficiaries to make claims under the Debtors' directors' and officers' liability insurance policy shall not be abridged or restricted and (ii) the rights and benefits of pre-paid bonds in place to guarantee performance under any Assumed Liability shall not be an Excluded Asset).

Id., § 2.2(e) (emphasis added).

---

[3] "Insurance Policy" is defined in the APA to include "bond[s] (surety or otherwise) . . . owned or held by or on behalf, or providing insurance or bonding coverage to, the Estates or any Debtor." Id. at p. 4.

15.     The "Assumed Liabilities" include certain Liabilities Under Assumed Contracts, Cure Amounts for Assumed Contracts, and Asset Removal Costs.  See id., § 2.3.  The Assumed Contracts include those contracts listed in Schedule 2.6(a) as well as those to be designated by the Buyer in Schedule 2.6(e), in accordance with Section 2.6(e).

16.     Hanover's interpretation of the APA is that the Bonds are Excluded Assets, and not Purchased Assets.  Among other things: (a) the Bonds do not fall within the definition of "Purchased Assets" (including any of the categories of "Purchased Assets" listed in Section 2.1 of the APA); (b) the Bonds are not listed as Assumed Contracts in Schedule 2.6(a); and (c) the second exception in Section 2.2(e) of the APA (which is block quoted above in Paragraph 14 above) does not exclude the Bonds from the definition of "Excluded Assets", as the Bonds do not "guarantee performance under any Assumed Liability."

17.     However, Hanover remains concerned that the APA may be considered ambiguous in this regard.   For example, although the Bonds are not listed as Assumed Contracts on Schedule 2.6(a), Section 2.6(e) permits the Buyer to designate, on Schedule 2.6(e), Contracts that the Buyer wishes to become Assumed Contracts.  Arguably, the APA could (incorrectly) be read to suggest that the Buyer can add the Bonds to Schedule 2.6(e).

18.      Alternatively, if the Buyer adds to Schedule 2.6(e) a contract for which the Debtors were required to have one or more of the Bonds in place, it could be argued that the Bonds fall within the scope of Section 2.2(o), which includes within the scope of the Purchased Assets "all other assets in connection with, relating to, or necessary for, or used in the operation of, the Purchased Assets, but for the avoidance of doubt, excluding the Excluded Assets."

19.     As discussed below, it would be improper to include the Bonds within the scope of the Purchased Assets.  Hanover understands that the APA is not intended to achieve such an

improper purpose.  However, out of an abundance of caution, and in order to ensure that the APA (and the Sale Order) is explicitly consistent with law, Hanover submits this limited objection.

## LIMITED OBJECTION

### I. The Bonds are Non-Assumable Financial Accommodations Under 11 U.S.C. § 365(c)(2)

20. As discussed above, potential ambiguity in the operative provisions of the APA might lead one to the conclusion that the Bonds are or might be Purchased Assets.  Such a conclusion would be inconsistent with law.

21. Section 365(c)(2) of the Bankruptcy Code provides that "[t]he trustee may not assume or assign any executory contract or unexpired lease of the debtor . . . if . . . such contract is a contract to make a loan, or extend other debt financing or financial accommodations, to or for the benefit of the debtor." 11 U.S.C. § 365(c)(2).

22. Surety bonds are credit enhancement instruments that strengthen the creditworthiness of the bond principal in various business transactions and contractual agreements. The bonds provide a guarantee to the obligee that the principal will perform its obligations, thereby reducing the perceived risk associated with engaging the principal in projects or transactions.  By assuming responsibility for potential losses or damages caused by the principal's failure to perform the bonded obligation(s), surety bonds reassure creditors, counterparties, and governing entities of the principal's financial and operational reliability and capability to meet its commitments and legal obligations.

23. For instance, in this case, two of the Bonds guaranty compliance with certain obligations incumbent upon motor vehicle dealers under applicable California Statutes. The third Bond was required to permit one of the Principal-Debtors to conduct vehicle testing near Death Valley National Park.

24. Courts have consistently held that surety bonds are non-assumable financial accommodations that cannot be assumed without the consent of the surety. See, e.g., In re Thomas B. Hamilton Co., Inc., 969 F.2d 1013, 1019-20 (11th Cir. 1992) ("courts have held that loan commitments, guaranty and surety contracts, and other contracts the principle purpose of which is to extend financing to or guarantee the financial obligations of the debtor are contracts to extend financial accommodations within the meaning of § 365(c)(2)"); Matter of Edwards Mobile Home Sales, Inc., 119 B.R. 857, 859 (Bankr. M.D. Fla. 1990) ("an obligation to pay the debts of another is a "financial accommodation" and as such is encompassed by Section 365(c)(2). Accordingly, the Court finds the Ohio Casualty surety bond to be a financial accommodation which cannot be assumed pursuant to Section 365(c)(2)."); In re Wegner Farms Co., 49 B.R. 440, 444 (Bankr. N.D. Iowa 1985) (same).

25. Further, any attempt to assign the Bonds to the Buyer would result in an improper substitution of principal (*i.e.*, a substitution of the Buyer in place of the Principal-Debtor named as principal in the applicable Bond), rendering the Bonds null and void. See 74 AM. JUR. 2D SURETYSHIP § 66 ("[t]he rule that any material change in the obligation not assented to by the surety will discharge the surety from liability is applicable where there has been a release of a principal or a change of principals."); Trustees of Carpenters & Millwrights Health Benefit Tr. Fund v. Kipco Co., 567 F.2d 951, 954 (10th Cir. 1977) ("generally, a surety will not be liable for the default of a new principal to whose substitution it has not consented").

26. For these reasons, Hanover objects to the APA to the extent that ambiguous language therein might lead it to be wrongfully interpreted to allow the assumption and assignment of Hanover's Bonds, as well as the indemnity agreements executed in favor of Hanover, in order to induce Hanover to execute the Bonds. To ensure that the APA is *not* interpreted or applied in

this improper fashion and contrary to governing law, the following clarifying language should be included in the Sale Order:

> Nothing in this Sale Order, the Asset Purchase Agreement, or any document related to any of the foregoing shall: (a) be construed to authorize or permit (i) the assumption and/or assignment of any surety bond executed by Hanover for or on behalf of any Debtor ("Hanover's Surety Bonds" and each a "Hanover Surety Bond"); (ii) the assumption and/or assignment of any existing indemnity agreement between Hanover and any Debtor ("Existing Indemnity Agreement"); or (iii) obligate Hanover to replace any Hanover Surety Bond and/or issue any new surety bond on behalf of the Buyer; or (b) be deemed to provide Hanover's consent to the involuntary substitution of any principal under any Hanover Surety Bond and/or any Existing Indemnity Agreement (the "Surety Agreements"), including, for the avoidance of doubt, that the Buyer shall not be a substitute principal under any Surety Agreements in the absence of Hanover's written consent thereto or further order of the Court. Additionally, nothing in this Sale Order, the Asset Purchase Agreement, or any other document, agreement, or instrument contemplated by any of the foregoing shall be deemed to alter, limit, modify, release, waive, or prejudice any rights, remedies, and/or defenses that Hanover has or may have under the Surety Agreements and/or common law.

## **RESERVATION OF RIGHTS**

27.     Hanover reserves all rights, including, but not limited to, the right to interpose such further and other objections as may be appropriate.


Dated: March 18, 2025         Respectfully submitted,
      Wilmington, Delaware

                                     /s/ *Zhao Liu*
                                     Frederick B. Rosner (DE No. 3995)
                                     Zhao (Ruby) Liu (DE No. 6436)
                                     THE ROSNER LAW GROUP LLC
                                     824 N. Market Street, Suite 810
                                     Wilmington, DE  19801
                                     Telephone: (302) 777-1111
                                     Email: rosner@teamrosner.com
                                                   liu@teamrosner.com

                                     -and-

Scott A. Zuber, Esq. (admitted *pro hac vice*)
Brian Kantar, Esq. (admitted *pro hac vice*)
CHIESA SHAHINIAN & GIANTOMASI PC
105 Eisenhower Parkway
Roseland, New Jersey 07068
Telephone: (973) 325-1500
Email: szuber@csglaw.com
       bkantar@csglaw.com

*Counsel to Hanover Insurance Company*