# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| CANOO, INC., *et al.*[1] <br> Debtors. | Case No. 25-10094 (BLS) |
| | (Jointly Administered) |
| | **Re: D.I. 51** |

## HARBINGER MOTORS INC.'S LIMITED OBJECTION TO CHAPTER 7 TRUSTEE'S MOTION FOR ENTRY OF ORDER: APPROVING ASSET PURCHASE AGREEMENT PURSUANT TO 11 U.S.C. § 363 AND GRANTING RELATED RELIEF

Harbinger Motors Inc. ("Harbinger"), by its undersigned counsel, hereby files this limited objection (the "Objection") to the *Chapter 7 Trustee's Motion For Entry of an Order: Approving Asset Purchase Agreement Pursuant to 11 U.S.C. § 364 and Granting Related Relief* [D.I. 51] (the "Motion"). In support of its Objection, Harbinger states as follows:

## PRELIMINARY STATEMENT[2]

1. Harbinger is an electric vehicle manufacturer, a contingent creditor, and a defendant in a pre-petition lawsuit commenced by debtor Canoo Technologies, Inc. more than two years ago that remains pending in California (the "Trade Secret Case").[3]

2. The Motion describes an offer by WHS Energy Solutions, Inc. (the "Buyer"), an entity owned and controlled by the Debtors' former Chief Executive Office, Anthony Aquila, to

---

[1] The Debtors in these cases are the following entities (the respective case numbers for each estate follows in parentheses): Canoo, Inc. (25-10094 BLS); EV Global Holdco LLC (25-10095 BLS); EV US Holdco Inc., (25-10096 BLS); Canoo Technologies Inc. (25-10099 BLS); Canoo Manufacturing LLC (25-10097 BLS);and Canoo Sales, LLC (25-10098 BLS).

[2] Capitalized terms not defined in this Preliminary Statement shall have the meanings ascribed to them in the Motion or as set forth below.

[3] Specifically, the Trade Secret Case refers to the action pending in the United States District Court for the Central District of California, Western Division, captioned *Canoo Technologies, Inc. v. Harbinger Motors Inc.*, 2:22-cv-09309-FLA-JC in which Canoo Technologies, Inc. alleges that Harbinger and several of its current or former officers misappropriated trade secrets in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq. ("DTSA") and the California Uniform Trade Secrets Act, Cal. Civ. Code § 3426.1 ("CUTSA").

acquire certain of the Debtors' assets (the "<u>Offer</u>") pursuant to an asset purchase agreement (the "<u>APA</u>"). Among the assets the Buyer seeks to acquire are the Debtors' trade secrets and a 10% interest in the Net Harbinger Recovery. In addition, the Buyer seeks to gain Consent Rights over any settlement of the Trade Secret Case. These provisions of the Offer and APA are objectionable and should be stricken—particularly under the circumstances here.

3. Respectfully, the sale process undertaken in this case has unfairly favored Mr. Aquila, an insider. The Trustee accepted Mr. Aquila's offer soon after these cases were commenced, apparently without engaging an investment banker, obtaining expert advice, or marketing the assets for sale. Indeed, the Trustee admittedly reached an agreement on the terms of the APA before Hilco even began its appraisal. Motion ¶13. Further, while the Trustee did establish a virtual data room for potential bidders,[4] no information was provided concerning the Trade Secret Assets that would enable third-parties to assess their value, such information (to the extent it actually exists) being in Mr. Aquila's exclusive possession.

4. For example, the Buyer proposes to acquire unidentified "trade secrets" and an interest in any proceeds from the Trade Secret Case. But Mr. Aquila alone supposedly knows what those trade secrets are and the bases for the claims asserted in the Trade Secret Case. A process where only one bidder—an insider—has the ability to identify the assets offered for sale and their value is not a fair process.[5]

5. Regardless of whether a competing bidder emerges, the Buyer's attempt to grab Consent Rights with respect to the Trade Secret Case must be rejected. This aspect of the Offer is

---

[4] From Harbinger's perspective, the information provided by the Debtors—in the data room and on the Schedules—was flawed and was one of the reasons Harbinger has (thus far) declined to make an overbid. Others may have been similarly frustrated. Specifically, Harbinger found that certain data and information was either insufficient, incomplete, referenced assets that the Debtors do not own or omitted assets that Harbinger believes the Debtors do own (such as certain assets the Debtors acquired from Arrival Automotive UK, Ltd., a former competitor).

[5] Harbinger acknowledges that if no competing bidder emerges, this objection will likely be less relevant.

improper because it cedes the Trustee's control over settlement negotiations—and the disposition of an estate asset—away from the Trustee to Mr. Aquila, who owes no fiduciary duties to these estates or any of their constituents. The Trustee alone, subject to Court approval, must decide whether, and on what terms, to monetize estate assets. Further, while seeking potential upside through the acquisition of 10% of the Net Harbinger Recovery, the Buyer leaves the downside burden of that litigation entirely to these estates by failing to assume its *pro rata* share of (a) out-of-pocket expenses incurred in connection with the Trade Secret Case, or (b) the statutory award of attorneys' fees that may be awarded to Harbinger and that are the subject of Harbinger's contingent claim.

6.      For the forgoing reasons, the Court should (a) strike those portions of the Offer that unfairly permit an insider to exploit his position by acquiring assets (*e.g.*, the Trade Secrets Assets (as defined below)) that no third-party has been able to identify or value, and (b) require that the APA be amended to (i) eliminate the provision in Section 7.3 granting the Buyer the Consent Rights over the settlement of the Trade Secret Case, and (ii) require the Buyer to assume its *pro rata* share of the obligations to fund costs and expenses and satisfy any statutory award of attorneys' fees that may be granted to Harbinger in the Trade Secret Case.

## A.      <u>Case Background</u>

7.      On January 17, 2025 (the "<u>Petition Date</u>"), each of the Debtors commenced a case by filing a voluntary petition for relief in the U.S. Bankruptcy Court for the District of Delaware under chapter 7 of the Bankruptcy Code.

8.      The Debtors were an electric vehicle company focused on the development and manufacture of electric vehicles, such as passenger vans, pickup trucks, sedans and light duty

commercial vehicles. The Debtors ceased operations upon the commencement of their chapter 7 cases and the chapter 7 trustee is currently liquidating the Debtors' assets.

**B.**     <u>**The Buyer, an Insider, Should Not be Permitted to Acquire Assets No Other Bidder Can Identify or Value**</u>

9.     Under the Offer the Buyer will acquire (a) the Debtors' so-called "trade secrets" and (b) a 10% interest in the Net Harbinger Recovery arising out of the Trade Secret Case (together, the "<u>Trade Secret Assets</u>"). Without conceding that any "trade secrets" exist, or that the purported Trade Secret Assets have any value, the Buyer—indisputably an insider—should not be permitted to acquire them when no third party can identify or value them.

10.     Notably, other than speaking with prospective counsel (to whom the Trustee apparently granted a 50% contingency fee), the Trustee appears to be in the same position as third parties because he fails to disclose his valuation of the Trade Secret Assets, or the basis of any such valuation.

11.     More fundamentally, the Trustee has not provided any information to third parties that would enable them to assess the trade secrets, the claims asserted in the Trade Secret Case or the value of the Trade Secret Assets. Thus, the Trustee is effectively validating an insider's exploitation of his position by permitting him to acquire unidentified assets, at an undisclosed price, where no third parties can compete.

12.     Under the circumstances, the Trade Secret Assets should be stripped from the Offer.

**C.**     <u>**The Trustee Should Not be Permitted to Grant Consent Rights Over the Disposition of an Estate Asset to a Non-Fiduciary**</u>

13.     Several aspects of the Buyer's proposed acquisition of the 10% interest in the Net Harbinger Recovery are objectionable and must be addressed.

14.     First, under Section 7.3(a) of the Aquila APA, "[a]ny settlement of the [Trade Secret Case] shall require the mutual consent of the [Trustee] and [Aquila]."  Motion Ex. A §7.3 (the "Consent Right").  Granting Aquila the Consent Right over the settlement of the Trade Secret Case is unprecedented, unwarranted, and may violate provisions of the *Handbook for Chapter 7 Trustees* promulgated by the United States Justice Department (the "Handbook").[6] The Trade Secret Case is an asset of the estates.  Therefore, the Trustee must maintain sole discretion to determine whether, and on what terms, to resolve the Trade Secret Case, not a third-party who owes no duty to the estates or any of its constituents.

15.     Second, Aquila proposes to take a 10% stake in any Net Harbinger Recovery but unjustifiably leave the financial liabilities associated with that interest.

16.     Harbinger is unaware of any precedent, law, or rule that authorizes an estate fiduciary (such as the Trustee) to delegate to a third-party (such as Mr. Aquila, himself an insider) the power to determine whether, when, and on what terms to monetize an estate asset. Indeed, the Trustee offers no justification for this extraordinary surrender of authority.

17.     In the event the Trustee determines that the Aquila Offer is the highest or best, the Court should require that the Aquila APA be amended to (a) delete the Consent Right from Section 7.3, and (b) require Aquila to assume his *pro rata* share of the Trade Secret Liabilities.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should sustain Harbinger's limited objection by (a) striking from the Offer the trade secrets and 10% interest in the Net Harbinger Recovery, and, in all events, (b) require that the APA be amended to (i) eliminate the Consent Rights from

---

[6] *See, e.g.*, Handbook §4.A ("the principal duty of the trustee is to collect and liquidate the property of the estate and to distribute the proceeds to creditors.").

Section 7.3, and (ii) require the Buyer to assume his *pro rata* share of the Trade Secret Liabilities, and grant such other and further relief as the Court deems just and proper.

Dated: March 28, 2025

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Colin R. Robinson*
Bradford J. Sandler DE Bar No. (4142)
John A. Morris (*pro hac vice*)
Colin R. Robinson (DE Bar No. 5524)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Email:    bsandler@pszjlaw.com
              jmorris@pszjlaw.com
              crobinson@pszjlaw.com

-and-

SHAPIRO ARATO BACH
Jonathan P. Bach (*pro hac vice*)
Daniel J. O'Neill (*pro hac vice*)
Shapiro Arato Bach LLP
1140 Avenue of the Americas
New York, NY 10036
Telephone: (212) 257-4880
Email:    jbach@shapiroarato.com
              doneill@shapiroarato.com

*Counsel to Harbinger Motors, Inc.*