**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>CANOO INC., *et. al.*,[1]<br><br>Debtors. | Chapter 7<br><br>Case No. 25-10094 (BLS)<br><br>(Jointly Administered)<br><br><u>Hearing Date</u>:  April 2, 2025 at 10:00 a.m. (ET)<br><u>Obj. Deadline</u>: March 28, 2025 at 4:00 p.m. (ET), extended to March 31, 2025 at 10:00 a.m. (ET)<br><br>Re: Docket Nos. 51, 83 & 89 |

**KASAI NORTH AMERICA, INC.'S OBJECTION AND RESERVATION OF RIGHTS WITH RESPECT TO: (I) CHAPTER 7 TRUSTEE'S MOTION FOR ENTRY OF AN ORDER APPROVING ASSET PURCHASE AGREEMENT PURSUANT TO 11 U.S.C. § 363 AND GRANTING RELATED RELIEF; (II) PROPOSED SALE ORDER; AND (III) THIRD NOTICE OF EXECUTORY CONTRACTS THAT MAY BE ASSUMED AND ASSIGNED PURSUANT THERETO**

Kasai North America, Inc. ("<u>Kasai</u>"), by and through its undersigned counsel, hereby files this objection and reservation of rights (the "<u>Objection</u>") to (I) the Chapter 7 Trustee's *Motion for Entry of an Order: Approving Asset Purchase Agreement Pursuant to 11 U.S.C. § 363 and Granting Related Relief* [Docket No. 51] (the "<u>Sale Motion</u>"); (II) the proposed order approving the Sale Motion [Docket No. 83] (the "<u>Sale Order</u>"); and (III) *Third Notice of Executory Contracts That May Be Assumed and Assigned, Pursuant to Section 365 of the Bankruptcy Code, in Connection with the Sale of Substantially All of the Estates' Assets, and the Proposed Cure Amounts* [Docket No. 89] (the "<u>Third Cure Notice</u>") in the above-captioned chapter 7 cases (the "<u>Chapter 7 Cases</u>"), and respectfully states as follows:

---

[1] The Debtors in these cases are the following entities: (the respective case numbers for each estate following in parentheses): Canoo, Inc. (25-10094 BLS); EV Global Holdco LLC (25-10095 BLS); EV US Holdco Inc. (25-10096 BLS); Canoo Technologies Inc. (25-10099 BLS); Canoo Manufacturing, LLC (25-10097 BLS); and Canoo Sales, LLC (25-10098 BLS).

**BACKGROUND**

1.  Through this proposed sale, WHS Energy Solutions, Inc. (the "Buyer"), an insider entity created by the Debtors' former chief executive officer, Anthony Aquila, for the sole purpose of acquiring the "Purchased Assets" seeks to acquire certain tooling (collectively, the "Tooling") that was manufactured pursuant to certain Governing Documents (as defined below) by Kasai that the Debtors (defined below) never paid for and was never delivered by Kasai to the Debtors.

2.  Not only did the Debtors fail to pay for the Tooling, but the Debtors, and specifically Canoo Technologies, Inc. ("Canoo"), materially breached the Collaboration Agreement (defined below) which resulted in Kasai terminating said agreement prepetition. Kasai was subsequently forced to initiate an arbitration against Canoo for, among other things, breach of the Governing Documents (defined below), by filing a JAMS Demand for Arbitration on June 15, 2023 at Reference No. 5220003491 (the "Arbitration").

3.  Critically, in light of the insider Buyer's current actions and legal positions, in the Arbitration, Canoo never argued that it paid for or otherwise owned the Tooling. In fact, during the Arbitration, Canoo *conceded* that it failed to pay for the Tooling. This Objection is being filed to prevent the insider from obtaining the Tooling without paying for it, which is contrary to the Governing Documents, the law, and is simply inequitable.

    **A. Kasai's Motion for Summary Disposition in the Arbitration**.

4.  On or about December 2, 2024, Kasai filed a Motion for Summary Disposition (the "MSD") in the Arbitration. By Order dated December 27, 2024, the Honorable Judge Terry Friedman (ret.) as arbitrator in the Arbitration, denied Kasai's MSD in part, but found that there was no dispute that Canoo breached the Collaboration Agreement and limited the hearing scheduled for January 29-30, 2025 (the "Limited Hearing") to Kasai providing evidence of its

performance under the Collaboration Agreement (defined below) and its related damages (the "MSD Order").  A true and correct copy of the MSD Order is attached hereto and incorporated herein as **Exhibit "A"**.

5.  The MSD Order confirms the following relevant undisputed material facts between Kasai and Canoo:

   a. On May 5, 2021, Kasai and Canoo entered into that certain Collaboration Agreement. *MSD Order*, pt. IV, ¶ 5.  A true and correct copy of the Collaboration Agreement is attached hereto and incorporated herein as **Exhibit "B"** (the "Collaboration Agreement").

   b. Kasai and Canoo agreed that Canoo's General Terms and Conditions (the "General Terms") applied to the Collaboration Agreement and subsequently issued Purchase Orders (defined below). *Id*. at ¶ 7.  A true and correct copy of the General Terms is attached hereto and incorporated herein as **Exhibit "C"**.

   c. From August to December 2021, Canoo issued approximately thirty-one (31) purchase orders to Kasai (collectively, the "Purchase Orders").[2]  Kasai invoiced Canoo for the Goods[3] provided in the Purchase Orders in the total amount of $5,289,714.12.  *Id*. at ¶ 8.  A true and correct copy of the exhibit admitted in the Arbitration that summarizes[4] the Purchase Orders is attached hereto and incorporated herein as **Exhibit "D"**.

   d. Kasai and Canoo entered into a payment plan agreement in June 2022 (the "Payment Plan"). *Id*. at ¶ 9.

   e. Pursuant to the Payment Plan, Canoo was to make a $72,000 payment to Kasai on August 25, 2022.  *Id*. at ¶ 10.

   f. On August 31, 2022, Kasai provided formal written notice of Canoo's material breach of the Collaboration Agreement (the "Material Breach Notice"). *Id*. at ¶ 12.  A true and correct copy of the Material Breach Notice is attached hereto and incorporated herein as **Exhibit "E"**.

   g. On October 12, 2022, Kasai informed Canoo in writing of its continued material breach of the Collaboration Agreement and demanded all outstanding payments

---

[2] The Collaboration Agreement, General Terms, and Purchase Orders shall collectively be referred to as the "Governing Documents".

[3] The Goods provided by Kasai to Canoo is the Tooling.

[4] Due to the voluminous, confidential and proprietary nature of the Purchase Orders, the Purchase Orders have not been appended to this Objection. Upon request and acceptable protective order, Kasai can provide the Purchase Orders.

owed as of that date (the "Termination Notice"). *Id*. at ¶ 13. A true and correct copy of the Termination Notice is attached hereto and incorporated herein as **Exhibit "F"**.

    h.    Canoo failed to pay the Purchase Orders. *Id*. at ¶ 15 (citing Exhibits 1, 2, & 3 provided in the Arbitration).[5]

    i.    As of October 18, 2024, Kasai determined that the total amount due and owing to Kasai from Canoo was $5,788,014.25, plus $1,318,274.23 in interest, as agreed to under the Payment Plan. *Id*. at ¶ 16.

**B. Debtors' Bankruptcy Filing and Proposed Sale**

6.    Just twenty-two days after the MSD Order and thirteen days before the Limited Hearing, on January 17, 2025 (the "Petition Date"), Canoo and certain affiliated debtors (collectively, the "Debtors") filed voluntary petitions for relief under chapter 7 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (this "Court"). These Chapter 7 Cases are being jointly administered at the above-captioned case number and stayed the Arbitration.

7.    On March 4, 2025, the chapter 7 Trustee (the "Trustee") filed the Sale Motion, seeking approval to sell substantially all of the Debtors' assets to the Buyer (the "Sale"). The Purchased Assets[6] include, but are not limited to, the Debtors' tangible personal property, machinery, tools (whether completed or in progress), equipment, and intellectual property. *See* Sale Motion, ¶ 9.

8.    In conjunction with the Sale, the Trustee seeks approval to assume and assign certain executory contracts to the Buyer (collectively, the "Assumed Contract(s)"). The Sale

---

[5] Due to the voluminous, confidential and proprietary nature of the Purchase Orders contained in the exhibits relied upon by the arbitrator in the MSD, the exhibits have not been appended to this Objection. Upon request and acceptable protective order, Kasai can provide the Purchase Orders.

[6] All capitalized terms not otherwise defined herein shall be given the definitions provided for in the Sale Motion, Sale Order, Asset Purchase Agreement, and Third Cure Notice, as applicable.

4

Motion allowed the Buyer until March 22, 2025 (the "Designation Deadline") to designate the contracts it *may* want the Trustee to assume and assign as part of the Sale. *Id*. at 19 (emphasis added).

9. The Trustee timely filed the following: (a) *Notice of Executory Contracts and Unexpired Leases that May be Assumed and Assigned, Pursuant to Section 365 of the Bankruptcy Code, in Connection with the Sale of Substantially all of the Estates' Assets, and the Proposed Cure Amounts* [Docket No. 68] (the "Initial Cure Notice"); and (b) *Second Notice of Executory Contracts and Unexpired Leases that May be Assumed and Assigned, Pursuant to Section 365 of the Bankruptcy Code, in Connection with the Sale of Substantially all of the Estates' Assets, and the Proposed Cure Amounts* [Docket No. 80] (the "Second Cure Notice" and, together with the Initial Cure Notice, the "Timely Filed Cure Notices"). No extension of time to notify contract counterparties that their executory contracts could be assumed and assigned as part of the Sale was filed of record. Kasai was not listed in either of the Timely Filed Cure Notices.

10. On March 24, 2025, after the Designation Deadline had passed, the Trustee filed the Third Cure Notice. For the first time, Kasai is listed on the Third Cure Notice[7] with a cure amount of $5,621,830 as of January 17, 2025 (the "Proposed Cure Amount"). The Third Cure Notice does not identify exactly what executory contract exists between Kasai and the Debtors that may be assumed and assigned as part of the Sale.

11. Since January 30, 2025, Kasai, through its counsel, has attempted to confirm with the Trustee, due to the vague and confusing Schedules filed in these Chapter 7 cases, that its Tooling is not property of the estate and negotiate a protective stay relief order confirming such. Kasai further attempted to resolve its disputes with the Buyer once the Buyer finally provided a

---

[7] Despite the Timely Filed Cure Notices having a certificate of service indicating timely service, as of the date of this Objection, no similar certificate of service was filed for the Third Cure Notice.

5

substantive response, less than one week ago, to Kasai's position on the Tooling. Given the short (and potentially untimely) notice, the Trustee allowed Kasai until Monday, March 31, 2025 at 10:00 a.m. (ET) to file this Objection, with the hope that the parties could resolve the disputes without the need for an objection. While Kasai is open to a business solution for the Buyer to purchase the Tooling, Kasai was unable to resolve the issues addressed in this Objection with the Trustee and the Buyer, thereby necessitating this Objection.

12. As set forth herein, there is no executory contract between Kasai and the Debtors that can be assumed and assigned to the Buyer through the Sale or any future sale. Even if an executory contract exists (which Kasai disputes), Kasai's cure claim is in an amount not less than $7,106,288.48, plus accruing interest and storage fees and costs for the Tooling. Kasai's cure claim must be satisfied prior to any assumption and the Buyer has failed to satisfy its obligations of adequate assurance of future performance. Further, the Tooling is not property of the estate and, therefore, cannot be sold to the Buyer. Finally, even if the Court were to determine that title to the Tooling passed to Canoo, the Tooling is encumbered by a possessory lien under Tenn. Code Ann. § 66-11-102 (g) (the "Kasai Lien") that must be satisfied in full as part of the Sale.

## LIMITED OBJECTION

13. Although Kasai does not generally object to the Trustee's ability to sell substantially all of the Debtors' assets, Kasai does object to the proposed Sale to the extent that such sale seeks to impair, limit and/or modify Kasai's rights under the Governing Documents. Specifically, Kasai objects to the Sale: (1) because there is no executory contract between Kasai and Canoo that can be assumed and assigned to the Buyer; (2) to the extent the Sale purports to include the Tooling because it is Kasai's property, not property of the Debtors' estates; (3) to the extent the Tooling is deemed property of the estate because the Sale does not provide for

satisfaction and release of Kasai's tooling liens as required by Section 363(f); and (4) to the extent the Court deems there is an executory contract, Kasai's cure claim must be satisfied prior to any assumption and the Buyer has failed to satisfy its obligations of adequate assurance of future performance.

      **A.**    **There is No Executory Contract Between Kasai and the Debtors.**

14.    As a threshold matter, the Trustee and the Buyer must identify the executory contracts that they wish to assume and assign as part of the Sale. While the Trustee and the Buyer have listed Kasai and the Proposed Cure Amount in the Third Cure Notice, there is no executory contract that the Trustee can assume and assign to the Buyer as part of the Sale.

      *(i)*    *The Governing Documents were properly terminated prepetition.*

15.    The Collaboration Agreement provides, in relevant part, as follows:

> **Rights to Terminate**. This Agreement may be terminated upon mutual consent of both Parties or it may be unilaterally terminated by a Party in the following circumstances: (a) a Party may terminate this Agreement *if the other Party is in material breach of this Agreement and the breach continues for thirty (30) days after written notice of the breach is provided to the breaching Party*[.]

Collaboration Agreement, § 13.1 (emphasis added).

16.    As set forth above and confirmed in the MSD Order, it is undisputed that Kasai notified Canoo in writing on August 31, 2022 that it was in material breach of the Collaboration Agreement and the Purchase Orders. *See*, *generally*, Material Breach Notice. Section 13.1 of the Collaboration Notice requires no further notice to terminate the Collaboration Agreement.

17.    Nevertheless, it is undisputed that on October 12, 2022, Kasai sent Canoo the Termination Notice which notified Canoo that Kasai had ceased all work on Canoo Purchase Orders due to Canoo's material breach. Further, and importantly, the Termination Notice informed Canoo that if Kasai did not "receive payment in full by November 15, 2022, then [Kasai would]

consider the program [under the Collaboration Agreement and Governing Documents] cancelled." Termination Notice, pg. 2.

18. Despite Kasai's additional notice and demand, Canoo's material breach continued and, ultimately, Kasai commenced the Arbitration. Neither Kasai nor Canoo performed under the Collaboration Agreement or Purchase Orders after the Arbitration commenced and, therefore, the conduct of the Parties supports the fact that the Termination Notice effectively terminated the Governing Documents.

19. A contract that is terminated prepetition is no longer considered an executory contract that can be assumed and assigned or rejected under section 365. *See*, *In re EBC I, Inc.*, 356 B.R. 631, 638 (Bankr. D. Del. 2006)(internal citations omitted).

20. It is undisputed that the Collaboration Agreement, and the Purchase Orders issued thereunder, terminated prepetition. Canoo already conceded that position in the Arbitration and cannot take a diametrically opposite position before this Court in these Chapter 7 Cases.

**(ii)** ***Section 365(c)(1) prohibits the assumption and assignment of the Governing Documents.***

21. Further, section 365(c) of the Bankruptcy Code prevents the Trustee from assuming or assigning any executory contract or unexpired lease of the Debtors if applicable non-bankruptcy law "excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor…and such party does not consent to assumption or assignment." 11 U.S.C. § 365(c)(1); *see In re Physiotherapy Holdings, Inc.*, 538 B.R. 225, 231 (Bankr. D. Del. 2015).

22. Canoo's material breach and Kasai's subsequent termination of the Collaboration Agreement prevents the Trustee from assuming and assigning the Governing Documents.

23. Therefore, there is no executory contract between Kasai and the Debtors that could be assumed and assigned pursuant to the Sale.

**B.     The Tooling is Kasai's Property and Cannot be Included in the Sale.**

24. Kasai objects to the Sale to the extent the Trustee purports to be selling the Tooling itself to the Buyer, or any subsequently identified buyer.

**(i)     *The conditions precedent for title of the Tooling to pass to Canoo did not occur.***

25. The Tooling is Kasai's property. Kasai does not consent to the sale of the Tooling. The Trustee cannot sell property that is not part of the Debtors' estates, and Canoo has no interest in the Tooling.

26. For title to the Tooling to have passed to Canoo, the Governing Documents required that Canoo pay for the Tooling *and* that the Tooling be delivered to Canoo. Neither of these conditions precedent for title to pass to Canoo occurred, as already conceded by Canoo in the Arbitration.

27. The General Terms expressly provide that title to the Tooling passes upon delivery. *See* General Terms, ¶ 2(c). The Tooling was never paid for by Canoo and, therefore, never delivered by Kasai to Canoo. In fact, Kasai continues to incur costs for storing the Tooling.

28. Further, while Paragraph 2(e) defines certain property as "Canoo Property" the Tooling does not qualify as "Canoo Property." First, it was not "provided by Canoo" and it has not been "created, developed, conceived or first reduced to practice by or on behalf of [Kasai] to produce the [Tooling], and for which *Canoo has agreed to reimburse [Kasai]*." General Terms, ¶ 2(e)(emphasis added). Second, even if somehow the Tooling was included as "Canoo Property", which it is not, Paragraph 2(e) requires that payment be made for the Canoo Property *prior to* providing the property to Canoo. *Id*. ("Upon written request *and after payment has been made by*

9

*Canoo for the Canoo Property*, the Canoo Property shall be released to Canoo or delivered by [Kasai] to Canoo.").

29. The Collaboration Agreement makes this distinction clear that any ownership rights transferred to Canoo under the Governing Documents are limited to specific deliverables actually *delivered to Canoo*. *See*, Collaboration Agreement, § 7.1.

30. Moreover, even if this Court found that Canoo had title to the Tooling (which Kasai disputes), Kasai can claim a possessory lien over the Tooling, all of which is in Kasai's possession, for payment of the outstanding amounts owed under the Governing Documents. Tenn. Code Ann. § 66-11-102 (g). *See* Section C below.

31. The Tooling is quite simply not part of the Debtors' estates and must be expressly excluded from the "Purchased Assets" as defined in the Sale Motion, Asset Purchase Agreement, and the Sale Order.

**(ii)** ***The Trustee acknowledges that ownership of the "Purchased Assets" is unknown and, therefore, the Sale Motion should be denied.***

32. Alarmingly, the Trustee appears to acknowledge that he is unsure of what is included in the Sale when he states that he is only selling whatever "right, title and interest" in the "Purchased Assets" the Debtors *may* have. *See,* Sale Motion, ¶ 9. The Trustee also disclaims warranty of title to any of the assets the Trustee is proposing to sell in both the proposed Asset Purchase Agreement and the Sale Order. *See*, Asset Purchase Agreement, § 5.4; Sale Motion, ¶ 21.

33. However, despite this seeming concession from the Trustee, in the Sale Order, the Trustee is requesting this Court to order any entity that may be in possession of any of the "Purchased Assets" immediately surrender possession to the Buyer on the Closing Date. Sale Order, ¶ 17.

34. To the extent the Trustee argues that section 363(f)(4) authorizes the sale of the Tooling *before* it has been determined to be property of the Debtors' estates, the Court should reject that argument as noted by several other similarly-situated vendors.[8] *See, In re Worcester Country Club Acres, LLC*, 655 B.R. 41 (Bankr. D. Mass. 2023) ("By its very structure, the Bankruptcy Code requires a determination of whether property is property of the estate (and thus may be sold) prior to any analysis as to whether a particular interest in property is in a bona fide dispute under [section 363(f)(4) of the Bankruptcy Code]."). *See also*, *In re Goli Nutrition Inc.,* No. 24-10438 (LSS), 2024 WL 1748460, at *6-7 (Bankr. D. Del. Apr. 23, 2024) (finding that courts that rely on section 363(f)(4) in order to approve a sale of property in which ownership is disputed are mistaken because, in part, disputes envisioned under the subsection are not ownership disputes.).

35. Therefore, the Trustee has no ability to sell the Tooling to the Buyer, or any buyer subsequently designated by the Trustee. The Tooling must be expressly excluded from the Purchased Assets.

### C. To the Extent the Tooling is Deemed Property of the Estate, the Sale Does Not Provide for Satisfaction and Release of Kasai's Tooling Liens as Required by Section 363(f) of the Bankruptcy Code.

36. Since Kasai maintained and continues to maintain possession over the Tooling by storing it at a warehouse located in Tennessee, Kasai has a statutory, possessory lien over the Tooling securing the outstanding amounts owed by Canoo under the Governing Documents. Tenn. Code Ann. § 66-11-102 (g).[9] The Kasai Lien has priority over any other secured interests, to the extent such interests exist, since it secures payment for the Tooling. Tenn. Code Ann. § 47-9-333.

---

[8] Kasai hereby joins in the objections raised by all similarly-situated vendors to the Sale.
[9] While the Governing Documents are construed under California law, because the Tooling is in Tennessee in Kasai's possession, Tennessee's possessory lien laws apply. Tenn. Code Ann. § 66-11-102.

37. Section 363(f) only allows the trustee to sell property free and clear of any interest if (a) applicable nonbankruptcy law permits the sale free and clear of the interest; (b) the entity consents; (c) the interest is a lien and the sale price is greater than the aggregate value of all liens on the property; (d) the interest is in bona fide dispute; or (e) the entity could be compelled to accept a money satisfaction of such interest. 11 U.S.C. § 363(f)(1)-(5).

38. Here, Kasai does not consent to the Sale and the Sale does not provide for the satisfaction and release of the Kasai Lien. The Trustee has not demonstrated that it has satisfied one or more of the provisions under section 363(f) with respect to the Tooling and the Kasai Lien, to the extent the Court deems the Tooling to be part of the Debtors' estate. As such, the Sale Motion must be denied. *See, e.g., In re Messina,* 687 F.3d 74, 77 n.4 (3d Cir. 2012); and *In re Whitehall Jewelers Holdings, Inc.*, No. 08-11261 (KG), 2008 WL 2951974 at *4 (Bankr. D. Del. July 28, 2008).

### D. If the Court Finds an Executory Contract Exists, Kasai Demands Adequate Assurance of Future Performance and Objects to the Assumption and Assignment of the Governing Documents.

39. Notwithstanding the foregoing, if the Court determines that the Governing Documents constitute an executory contract that can be assumed and assigned, Kasai (i) objects to the assumption and assignment of any executory contract; (ii) demands adequate assurance of future performance; and (iii) reserves all rights with respect to any such proposed assumption and assignment.

(i) *The Proposed Cure Amount is incorrect.*

40. Any supposed assumption and assignment of the Governing Documents, to the extent an executory contract is found to exist, must comply with the requirements outlined in section 365 of the Bankruptcy Code including, but not limited to, paying all amounts owed under

the Governing Documents through the effective date of the assumption of the Governing Documents.

41. As Canoo is well-aware based on the Arbitration, the Proposed Cure Amount does not account for all amounts owed from Canoo to Kasai under the Governing Documents.

42. Kasai expressly reserves the right to file an objection to the Proposed Cure Amount by the deadline set in the Third Cure Notice, i.e., April 14, 2025. Kasai further expressly reserves its right to amend or supplement this Objection from time to time and at any time as Kasai continues to incur storage fees and costs for the Tooling.

43. Additionally, Kasai requests that any future order approving the assumption and assignment of the Governing Documents require the Trustee, or any subsequent assignee, to remain responsible for any unbilled amounts incurred due to the storage of the Tooling.

**(ii)** *Kasai demands adequate assurance of future performance by the Buyer, or any other buyer.*

44. In accordance with section 365 of the Bankruptcy Code, Kasai must be provided with sufficient information with respect to adequate assurance of future performance by the buyer prior to the potential assumption and assignment of Governing Documents to the Buyer, or any proposed assignee.

45. Especially considering the insider nature of the proposed Sale, Kasai demands proof of adequate assurance of future performance with respect to the Governing Documents as Kasai rightfully has concerns with the ability or even desire of the Buyer to perform under the Governing Documents going forward.

**RESERVATION OF RIGHTS**

46. Nothing contained herein shall be deemed an admission or waiver by Kasai. Kasai expressly reserves the right to amend or supplement this Objection and will file a cure objection if needed by the April 14, 2025 deadline.

47. Nothing in this Objection is intended to be, or should be construed as, a waiver by Kasai of any of its rights under the Governing Documents, the Bankruptcy Code, or applicable law. Kasai expressly reserves all such rights, including, without limitation, the right to: (a) supplement and/or amend this Objection and to assert any additional objections with respect to the Proposed Cure Amount, adequate assurance of future performance, and/or the Sale itself; (b) file a proof of claim in these Chapter 7 Cases; (c) assert any nonmonetary defaults under the Governing Documents; and (d) assert any further objections as it deems necessary or appropriate.

WHEREFORE, for all the foregoing reasons, Kasai North America, Inc. respectfully requests this Court sustain the Objection and deny the Sale Motion.

Dated: March 31, 2025  
       Wilmington, Delaware

Respectfully Submitted,

**LANDIS RATH & COBB LLP**

*/s/ Kimberly A. Brown*  
Kimberly A. Brown (No. 5138)  
Joshua B. Brooks (No. 6765)  
919 Market Street, Suite 1800  
Wilmington, DE 19801  
Tel: (302) 647-4436  
Fax: (302) 467-4450  
Email: brown@lrclaw.com  
       brooks@lrclaw.com

-and-

**FROST BROWN TODD LLP**
Patricia K. Burgess (*Pro Hac Vice Pending*)
(Tennessee Bar No. 039956)
150 3rd Avenue South, Suite 1900
Nashville, Tennessee 37201
Tel: (615) 251-5550
Fax: (615) 251-5551
E-mail: pburgess@fbtlaw.com

*Counsel for Kasai North America, Inc.*