IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>CANOO INC. *et al.*,[1]<br><br>Debtors. | Chapter 7<br><br>Case No. 25-10094 (BLS)<br><br>(Jointly Administered)<br><br>**RE: Docket Items 51, 68, 77, 80, 81, 83, 84, 89, 90, 95, 99, 102, 104, 105, 111, 115, and 122.** |

**ORDER (A) APPROVING ASSET PURCHASE AGREEMENT AND SALE OF
THE DEBTOR'S ASSETS PURSUANT TO 11 U.S.C. § 363,
AND (B) GRANTING RELATED RELIEF**

Upon the *Trustee's Motion for Entry of Order (A) Approving Asset Purchase Agreement Pursuant to 11 U.S.C. § 363 and (B) Granting Related Relief* (the "Motion")[2] filed by Jeoffrey Burtch (the "Trustee"), the chapter 7 trustee in the bankruptcy cases (the "Bankruptcy Cases") of the above-captioned debtors (the "Debtors"), seeking entry of an order, pursuant to sections 105(a), 362, 363, and 365 of the United States Bankruptcy Code (11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code")), Rules 2002, 6004, and 9007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1 and 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"): (i) authorizing and approving the sale of certain assets of the Debtors free and clear of all liens, claims, encumbrances, and interests pursuant to the terms of the Asset Purchase Agreement attached as Exhibit A to the Motion (as modified, the "APA"); and (ii) granting related relief; and

---

[1] The Debtors in these cases are the following entities (the respective case numbers for each estate follows in parentheses): Canoo, Inc. (25-10094 BLS); EV Global Holdco LLC (25-10095 BLS); EV US Holdco Inc., (25-10096 BLS); Canoo Technologies Inc. (25-10099 BLS); Canoo Manufacturing (25-10097 BLS); and Canoo Sales, LLC (25-10098 BLS).

[2] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Motion.

1

upon the declaration of the Trustee in support of the Motion [Doc. No. 136]; and upon the record of these bankruptcy cases; and the Court having conducted a hearing on the Motion on April 9, 2025 (the "Sale Hearing"), at which time all interested parties were offered an opportunity to be heard with respect to the Motion; and adequate and sufficient notice of the Motion, the Sale Hearing, and the sale and all transactions contemplated thereunder and in this Sale Order having been provided to all persons required to be served in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules; and jurisdiction existing for the Court to consider the Motion; and upon the statements in support of the Motion presented at the hearing before the Court; and it appearing that the relief requested in the Motion is in the best interests of the Debtors' estates (the "Estates") and creditors; and it further appearing that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and the Court having (a) reviewed and considered the Motion, all relief related thereto, the objections thereto and statements of counsel and the evidence presented in support of the relief requested by the Trustee in the Motion at the Sale Hearing and (b) found that the Buyer has submitted the highest or otherwise best offer for the Purchased Assets; and after due deliberation thereon,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

    A.    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

    B.    To the extent any of the following findings of fact constitute conclusions of law, they are hereby adopted as such.

**Jurisdiction, Final Order, and Predicates for Relief**

C. The Court has jurisdiction to hear and decide the Motion, and exclusive *in rem* jurisdiction over property of the Estates, pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b), and the Court may enter a final order consistent with Article III of the United States Constitution. Venue is proper in this District and in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D. The statutory and procedural predicates for the relief requested in the Motion are sections 105(a), 362, 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006 and 9007, and Local Rules 2002-1, and 6004-1.

**Notice of the Motion and Hearing**

E. The disclosures made by the Trustee in the Motion regarding the proposed sale were and are adequate under the applicable Bankruptcy Rules and Local Rules.

F. Trustee filed and served the *Trustee's Notice of Executory Contracts and Unexpired Leases that may be Assumed and Assigned, Pursuant to Section 365 of the Bankruptcy Code, in Connection with the Sale of Substantially All of the Estates' Assets, and the Proposed Cure Amounts*, dated March 7, 2025 [Doc. No. 68] (the "Cure Notice").

G. The Trustee filed and served the *Trustee's Second Notice of Executory Contracts and Unexpired Leases that may be Assumed and Assigned Post-Closing, Pursuant to Section 365 of the Bankruptcy Code, in Connection with the Sale of Substantially All of the Estates' Assets, and the Proposed Cure Amounts*, dated March 18, 2025 [Doc. No. 80] and the *Trustee's Third Notice of Executory Contracts and Unexpired Leases that may be Assumed and Assigned Post-Closing, Pursuant to Section 365 of the Bankruptcy Code, in Connection with the Sale of*

*Substantially All of the Estates' Assets, and the Proposed Cure Amounts*, dated March 24, 2025 [Doc. No. 89] (collectively, the "Delayed Contract Notice").

H. It appearing from the Certificate of Service of the Motion [Doc. No. 51] and the other Certificates of Service [Doc Nos. 68 and 81], that actual written notice of the Motion, Cure Notice, Delayed Contract Notice, Sale Hearing, and the deadline for objections to the Motion, Cure Notice and Delayed Contract Notice, have been afforded to all known interested persons and entities, including, but not limited to the following parties (the "Notice Parties"): (a) the Office of the United States Trustee; (b) counsel for Debtors; (c) the Buyer; (d) counterparties to the Assumed Contracts (including those provisionally designated contracts potentially assumable and assignable post-Closing (the "Delayed Contracts")); (e) all parties who filed proofs of claims in Debtors' cases; (f) any creditors identified as secured in the Debtors' schedules; (g) all parties known to the Trustee to have expressed any interest in purchasing any assets of the Estates; and (h) all parties in interest who requested notice pursuant to Bankruptcy Rule 2002.

I. All Counterparties to each Assumed Contract set forth in the Cure Notice and Delayed Contract Notice have had an adequate opportunity to object to assumption and assignment of the applicable Assumed Contract and attendant Cure Amount. To the extent that any such party did not timely file an objection by the date that is twenty-one (21) days after the service of the Cure Notice or the relevant Delayed Contract Notice, as appliable ("Cure/Assignment Objection Deadline"), with respect to a given Assumed Contract or has withdrawn or withdraws its Cure/Assignment Objection, (i) such consenting counterparty shall be deemed to have consented to the assumption and assignment of each of its Assumed Contract and (ii) the Cure Amount necessary to "cure" all "defaults", each within the meaning of section 365(b) of the Bankruptcy

Code, under each of such consenting Counterparty's Assumed Contract shall be deemed to be the applicable amount set forth in the Cure Notice or Delayed Contract Notice, as applicable.

J.  Notice of the Motion, Cure Notice, Delayed Contract Notice, and Hearing was proper, timely, adequate, and sufficient under the circumstances has been provided in accordance with sections 102(1), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004, 6006 and no other or further notice is required.

**Satisfaction of Standards for Approval of Free-and-Clear Sale**

K.  A sound business purpose justifies the sale of the Purchased Assets to Buyer by the Trustee outside of the ordinary course of business.

L.  The consideration to be provided by Buyer pursuant to the APA: (i) is fair and reasonable; (ii) is the highest or otherwise best offer for the Purchased Assets; and (iii) constitutes reasonably equivalent value and fair consideration.

M.  Consummation of the transactions contemplated in the APA will provide the highest and best value for the Purchased Assets, and is in the best interests of the Estates and creditors.

N.  The decision to enter into the APA and consummate the transactions contemplated thereunder constitutes the exercise of the Trustee's sound business judgment, in compliance with his fiduciary duties.

O.  The transactions contemplated under the APA were negotiated by the Trustee and Buyer at arm's length, without collusion, and in good faith within the meaning of section 363(m) of the Bankruptcy Code. Buyer has not engaged in any collusion or misconduct, is a good faith purchaser under section 363(m) of the Bankruptcy Code, is entitled to all of the protections afforded thereby, and otherwise has proceeded in good faith in all respects in connection with this

proceeding in that: (a) Buyer recognized that the Trustee was free to deal with any other party interested in acquiring the Purchased Assets; (b) Buyer made the highest or otherwise best offer for the Purchased Assets; (c) all agreements or arrangements entered into by Buyer in connection with the transactions have been disclosed; and (d) the negotiation of the APA and any other agreements or instruments related thereto was in good faith.

P.      The Trustee and Buyer have not engaged in any conduct that would permit the APA or any transaction contemplated thereunder to be avoided under section 363(n) of the Bankruptcy Code.

Q.      The APA was not entered into for the purpose of hindering, delaying, or defrauding creditors within the meaning of applicable provisions of the Bankruptcy Code, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act, the Uniform Voidable Transactions Act, or any similar laws of any state or other jurisdiction whose law may be applicable to the contemplated transactions.

R.      The consummation of the sale pursuant to the APA will be a legal, valid, and effective sale of the Purchased Assets and will vest Buyer with all right, title, and interest of the Estates to the Purchased Assets free and clear of (i) any and all liens (including, without limitation, any and all "liens" as that term is defined in Bankruptcy Code section 101(37)), encumbrances, claims, mortgages, restrictions, hypothecations, charges, instruments, collective bargaining agreements, leases or subleases, licenses, options, deeds of trust, security interests, other interests, conditional sale or other title retention agreements, pledges, other liens (including mechanic's, materialman's, possessory and other consensual and non-consensual liens and statutory liens), judgments, demands, easements, servitudes, rights-of-way, encroachments, restrictive covenants, restrictions on transferability or other similar restrictions, rights of first refusal, offsets, contracts,

rights of recovery, rights of use or possession, and charges of any kind or nature, if any, including any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership, (ii) all claims (including, without limitation, any and all "claims" as that term is defined in Bankruptcy Code section 101(5)), whether arising prior to or subsequent to the commencement of the above-captioned cases, and whether imposed by agreement, understanding, law, equity, or otherwise, and (iii) all debts, liabilities, obligations, contractual rights and claims, labor, employment and pension claims, and debts arising in connection with any agreements, acts, or failures to act, in each case, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of these chapter 7 cases, and whether imposed by agreement, understanding, law, equity or otherwise, including claims otherwise arising under doctrines of successor liability ((i), (ii), and (iii) collectively, the "<u>Interests</u>").

S.    A sale of the Purchased Assets other than one free and clear of Interests would be of substantially less benefit to and would adversely affect the Estates.

T.    Buyer would not have entered into the APA and would not consummate the transactions contemplated thereunder if the transfer of the Purchased Assets by Buyer were not free and clear of Interests.

U.    With respect to any party asserting any Interest in the Purchased Assets, the sale complies with at least one of the requirements of section 363(f) of the Bankruptcy Code, and with respect to each Interest in the Purchased Assets: (a) applicable non-bankruptcy law permits the sale free and clear of such Interest; (b) the holder of such Interest consents to the Transaction; (c)

such Interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on the Purchased Assets; (d) such Interest is the subject of a bona fide dispute; or (e) the holder of such Interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such Interest.

V.     Any party with any Interest in the Purchased Assets who did not object to the Motion and the relief requested therein, or who withdrew their objections to the Motion, is deemed to have consented to the sale pursuant to section 363(f)(2).

W.     The Buyer shall not be subject to any liability whatsoever for any Contract that is not an Assumed Contract except to the extent such liability is an Assumed Liability.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.     The Motion is GRANTED as set forth herein.

2.     All objections and responses to the Motion, if any, are hereby resolved in accordance with the terms of this Order.  To the extent such objections or responses were not otherwise overruled, withdrawn, waived, settled, or resolved, they, and all reservations of rights included therein, are hereby overruled and denied.

3.     The APA and all transactions contemplated thereunder, including, without limitation, any releases of claims against the Trustee and the Estates and agreements to indemnify the Trustee and the Estates, are approved in all respects pursuant to sections 105(a), 363(b), and 365 of the Bankruptcy Code.  For clarity, in accordance with paragraph 25 of this Order, and notwithstanding anything in this Order including in the recitals, none of the property that is the subject of the Objections (as defined below), absent further Order of the Court or agreement between the Buyer and the respective Objecting Party (as defined below), shall be deemed a

Purchased Asset under the APA and this Order, including with respect to any rights granted to the Buyer in paragraphs 4 and 18 herein.

4. The Trustee and his agents, including the Buyer, are authorized to execute and deliver, and empowered to perform under, consummate, and implement the APA, together with additional instruments and documents that may be reasonably necessary or desirable to implement the APA, and to take all further actions, including, without limitation, commencing an action or actions (a) for turnover of any Purchased Assets being held by third parties or (b) to determine that certain property being held by a third party constitutes Purchased Assets that must be turned-over to the Trustee or the Buyer, and execute such other documents as may be necessary or appropriate to the performance of the obligations contemplated by the APA.

5. Pursuant to section 363(f) of the Bankruptcy Code, the sale of the Purchased Assets shall be free and clear of all Interests, with any Interests attaching to the proceeds of sale. Upon the Closing, the Purchased Assets shall vest in Buyer free and clear of Interests to the maximum extent permitted by section 363(f) of the Bankruptcy Code.

6. Buyer shall be deemed a good faith purchaser entitled to the benefits and protections afforded by section 363(m) of the Bankruptcy Code. Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the sale of the Purchased Assets shall not affect the validity of the sale of the Purchased Assets to Buyer.

7. The consideration provided by Buyer for the Purchased Assets under the APA is fair and reasonable, and the sale of the Purchased Assets shall not be subject to avoidance under section 363(n) of the Bankruptcy Code.

8. The Trustee is authorized to assume and assign each of the Assumed Contracts (including the Delayed Contracts) to the Buyer free and clear of all Interests pursuant to sections

105(a) and 365 of the Bankruptcy Code and to execute and deliver to the Buyer such documents or other instruments as may be necessary to assign and transfer the Assumed Contracts to the Buyer.  The payment of the applicable Cure Payments (if any), as fixed in the amounts (the "Cure Amounts") set forth in the Cure Notice or Delayed Contract Notice, as applicable, and as may be further supplemented, or, if applicable, such other amount(s) upon which the Trustee and any of the Counterparties may have agreed, shall: (a) effect a cure of all defaults existing thereunder as of the closing; and (b) compensate for any actual pecuniary loss to such non-Debtor counterparty resulting from such default.

9. Pursuant to section 365(f) of the Bankruptcy Code, subject to the payment of the applicable Cure Payments or other resolution with the Counterparty, the Assumed Contracts to be assumed and assigned under the APA shall be assigned and transferred to, and remain in full force and effect for the benefit of, the Buyer notwithstanding any provision in the contracts or other restrictions prohibiting their assignment or transfer.  Any provisions in any Assumed Contract that prohibit or condition the assignment of such Assumed Contract or allow the counterparty to such Assumed Contract to terminate, recapture, impose any penalty, condition on renewal or extension, or modify any term or condition upon the assignment of such Assumed Contract, constitute unenforceable anti-assignment provisions that are void and of no force and effect with the respect to the transactions authorized by this Order.  All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Trustee and assignment to the Buyer of the Assumed Contracts have been satisfied, including that the Buyer has provided adequate assurance of its future performance under the Assumed Contracts within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.  For clarity, in accordance with paragraph 25 of this Order, none of the alleged contracts that are the subject of the Objections (as

defined below) shall at this time, and absent further Order of the Court or agreement between the Buyer and respective Objecting Party (as defined below), be deemed Assumed Contracts or Delayed Contracts that are the subject of this Order or be deemed assumed and assigned under the APA or this Order, including with respect to any rights granted to the Buyer in paragraph 4 and 18 herein.

10. Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Buyer shall be fully and irrevocably vested with all right, title, and interest of the Debtors under the Assumed Contracts, and such Assumed Contracts shall remain in full force and effect for the benefit of the Buyer.  Each Counterparty to the Assumed Contracts shall be forever barred, estopped, and permanently enjoined from: (a) asserting against the Trustee, the Debtors or the Buyer or their respective property any assignment fee, acceleration, default, breach or Claim or pecuniary loss, or condition to assignment existing, arising or accruing as of the Closing or arising by reason of the Closing, including any breach related to or arising out of change-in-control provisions in such Assumed Contracts, or any purported written or oral modification to the Assumed Contracts and (b) asserting against the Buyer (or its property, including the Purchased Assets) any Claim, counterclaim, defense, breach, condition, setoff asserted, or that can be asserted against the Debtors existing as of the Closing or arising by reason of the Closing except for the Assumed Liabilities.  Notwithstanding any other provisions in this Order, or the APA, in addition to the Cure Payments, the Buyer assumes the obligations of the Debtors and/or Estates owed to non-Debtor counterparties to Assumed Contracts that have accrued or arisen under the Assumed Contracts before the Closing Date but that have not yet become due and/or defaults as of the Closing Date.  Moreover, the Buyer is purchasing and shall be entitled to enforce all rights and claims relating to or arising under the Assumed Contracts, and all setoffs and recoupment rights

of the non-Debtor counterparties to such Assumed Contracts are expressly preserved in connection therewith.

11. Upon the Closing and the payment of the relevant Cure Payments (or other resolution with the Counterparty), if any, the Buyer shall be deemed to be substituted for the Estates as a party to the applicable Assumed Contracts and the Estates shall be released, pursuant to section 365(k) of the Bankruptcy Code, from any liability under the Assumed Contracts.  There shall be no rent accelerations, assignment fees, increases, or any other fees charged to the Buyer or the Estates as a result of the assumption and assignment of the Assumed Contracts.  The failure of the Trustee or the Debtors to have previously enforced one or more terms or conditions of any Assumed Contract shall not be a waiver of such terms or conditions or of the right of the Buyer to enforce every term and condition of such Assumed Contract.  The validity of the assumption and assignment of any Assumed Contract to the Buyer shall not be affected by any existing dispute between the Trustee or the Debtors and any counterparty to such Assumed Contract.  Any party that may have had the right to consent to the assignment of any Assumed Contract is deemed to have consented for the purposes of section 365(e)(2)(A)(ii) of the Bankruptcy Code.

12. To the extent any Cure/Assignment Objection to a Cure Notice or Delayed Contract has not been resolved consensually (or adjudicated by the Court) at or before the Sale Hearing, the Trustee may schedule a hearing on shortened notice for this Court to adjudicate such outstanding Cure/Assignment Objection and the Trustee's request for approval to assume and assign the related Assumed Contract (including any Delayed Contract) to the Buyer.

13. Provided that the Buyer has advised the Trustee in writing that it does not wish to assume a Delayed Contract, nothing herein or in the APA shall prohibit the Trustee from seeking to reject such Delayed Contract.

14. The assignments of each of the Assumed Contracts are made in good faith under sections 363(b) and (m) of the Bankruptcy Code.

15. The Buyer is not and shall not be deemed (i) a "successor" to the Debtors or the Estates, (ii) to have, *de facto* or otherwise, merged with or into the Estates or the Debtors, or (iii) to be a mere continuation or substantial continuation of the Debtors, the Estates or the enterprise of the Debtors under any theory of law or equity as a result of any action taken in connection with the APA or any of the transactions or documents ancillary thereto or contemplated thereby or in connection with the acquisition of the Purchased Assets.

16. Upon consummation of the Sale, if any Person or Entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing Interests against or in the Purchased Assets shall not have delivered to the Trustee prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Interests that the person or entity has with respect to the Purchased Assets (unless otherwise assumed in the APA), or otherwise, then: (i) each of the Trustee and the Buyer is hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Purchased Assets; and (ii) the Buyer is hereby authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, will constitute conclusive evidence of the release of all Interests in the Purchased Assets of any kind or nature (except as otherwise assumed in the APA); *provided that*, notwithstanding anything in this Order or the APA to the contrary, the provisions of this Order will be self-executing, and neither the Trustee nor Buyer will be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions

of this Order.  For the avoidance of doubt, upon consummation of the Sale, the Buyer is authorized to file the applicable termination statements, lien terminations, or other amendments in any required jurisdiction to remove and record, notice filings or financing statements recorded to attach, perfect, or otherwise notice any lien or encumbrance that is extinguished or otherwise released pursuant to this Order under section 363 of the Bankruptcy Code and the related provisions of the Bankruptcy Code.  Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA, including, without limitation, recordation of this Order.  This Order shall be binding upon and shall govern the acts of all persons including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of such assets or other property interests.

17. All entities that are currently, or on the Closing Date may be, in possession of some or all of the Purchased Assets are hereby directed to surrender possession of the Purchased Assets to the Buyer on the Closing Date, unless the Buyer otherwise agrees.

18. The Buyer is hereby authorized to take all actions it deems necessary to enforce the terms of this Order, including, without limitation, commencing an action or actions (a) seeking (under Bankruptcy Code section 542 or other applicable law) turnover of any Purchased Assets being held by third parties that have not been surrendered or turned-over to the Buyer or Trustee,

14

or (b) to determine that certain property being held by a third party constitutes Purchased Assets and must be surrendered or turned-over to the Buyer. .

19. No bulk sales law or any similar law of any state or other jurisdiction shall apply to the Trustee's conveyance of the Purchased Assets.

20. In the event of a conflict between this Order and the APA, this Order shall control.

21. The failure specifically to include any particular provisions of the APA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the APA be authorized and approved in its entirety and the Buyer shall have no liability for actions taken in accordance with the APA and this Order.

22. The Trustee is transferring the Purchased Assets "as is and where is" and the Trustee makes no, and disclaims any, representation or warranty to Buyer or any other party with respect to the APA or any of the transactions contemplated by the APA, including, without limitation, the extent to which the Estates have any right or interest in any of the Purchased Assets, any warranty of merchantability or fitness for a particular purpose, or any warranty or representation regarding any regulatory matters related to the APA or any transactions contemplated thereunder.

23. The Trustee shall have no liability for any actions taken by Buyer or any other party with respect to any transactions contemplated under the APA.

24. The APA and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Estates.

25. Notwithstanding anything to the contrary contained herein, this Order does not deem in any way that any property is property of the estate or a Purchased Asset, nor approve the transfer of such property to Buyer, nor deem that any alleged contract is an executory contract or otherwise assumable or assignable, nor approve of the assumption and assignment of such contract to Buyer, with respect to any property or any alleged contractual or other rights addressed in the following objections filed with the Court: Hanover Insurance Company [Doc. No. 77]; CHEP Container and Pooling Solutions, Inc. [Doc. No. 84]; Tachi-S Engineering U.S.A. Inc. [Doc. No. 90]; Altair Engineering, Inc. [Doc. No. 95]; Cosma International of America, Inc. and Affiliates [Doc. No. 99]; Oracle America, Inc. and Oracle Credit Corp. [Doc. No. 102]; Rogers Corporation [Doc. No. 104]; Sanmina Corporation [Doc. No. 105]; Northwest ISD, the County of Denton, Texas [Doc. No. 111]; Kasai North America, Inc. [Doc. No. 115]; and Principal Manufacturing Corporation [Doc. No. 122] (collectively, the "Objections", and each objecting party an "Objecting Party"), absent further Order of the Court or agreement between the Buyer and the respective Objecting Party. With respect to the Objections, the Buyer, the Trustee, and the Objecting Party agree to work in good faith to resolve the Objections by April 23, 2025, and shall file a stipulation by that date to reflect any such resolution (a "Stipulation"). For any Objection for which a Stipulation has not been filed, this Court shall conduct a preliminary non-evidentiary hearing on any such Objection(s) on April 28, 2025 at 1:30 p.m. In the interim, all rights of all parties with respect to the matters set forth in the Objections shall be reserved in full, and nothing in this Order shall be deemed to impact, moot, or limit in any way any of the rights of any of the Objecting Parties including those asserted in their respective Objections and the right to file claims against the Estates, including without limitation, administrative claims.

26. Nothing in this Sale Order, the APA, or any document related to any of the foregoing shall: (a) be construed to authorize or permit (i) the assumption and/or assignment of any surety bond executed by Hanover Insurance Company ("Hanover") for or on behalf of any Debtor ("Hanover's Surety Bonds" and each a "Hanover Surety Bond"); (ii) the assumption and/or assignment of any existing indemnity agreement between Hanover and any Debtor ("Existing Indemnity Agreement"); or (iii) obligate Hanover to replace any Hanover Surety Bond and/or issue any new surety bond on behalf of the Buyer; or (b) be deemed to provide Hanover's consent to the involuntary substitution of any principal under any Hanover Surety Bond and/or any Existing Indemnity Agreement (the "Surety Agreements"), including, for the avoidance of doubt, that the Buyer shall not be a substitute principal under any Surety Agreements in the absence of Hanover's written consent thereto or further order of the Court. Additionally, nothing in this Sale Order, the APA, or any other document, agreement, or instrument contemplated by any of the foregoing shall be deemed to alter, limit, modify, release, waive, or prejudice any rights, remedies, and/or defenses that Hanover has or may have under the Surety Agreements and/or common law.

27. The Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the APA, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Trustee is party or which has been assigned by the Trustee to the Buyer, and to adjudicate, if necessary, any and all disputes or actions concerning or relating in any way to the sale.

**Dated: April 9th, 2025**
**Wilmington, Delaware**

**BRENDAN L. SHANNON**
**UNITED STATES BANKRUPTCY JUDGE**