# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>CANOO INC. *et al.*,[1]<br><br>         Debtors. | Chapter 7<br><br>Case No. 25-10094 (BLS)<br><br>(Jointly Administered) |

### OBJECTION OF WHS ENERGY SOLUTIONS, LLC TO MOTION OF CHARLES GARSON FOR RELIEF FROM ORDER (A) APPROVING ASSET PURCHASE AGREEMENT AND SALE OF THE DEBTORS' ASSETS PURSUANT TO 11 U.S.C. § 363, AND (B) GRANTING RELATED RELIEF

WHS Energy Solutions, LLC, a Delaware limited liability company, formerly WHS Energy Solutions, Inc., a Delaware corporation ("**WHS**"), hereby objects (the "**Objection**") to the *Motion of Charles Garson for Relief from Order (A) Approving Asset Purchase Agreement and Sale of the Debtors' Assets Pursuant to 11 U.S.C. § 363, and (B) Granting Relief* [D.I. 161] (the "**Motion to Reconsider**"). In support of this Objection, WHS respectfully represents as follows:

### Preliminary Statement

1. The Motion to Reconsider is an ill-founded attempt by an individual, disgruntled *potential* bidder who lacks standing, to circumvent this Court's Sale Order, which approved a sale of the Debtor's assets to a good faith purchaser, WHS, entitled to the protections of section 363(m) of the Bankruptcy Code, which order was entered after an evidentiary hearing and to which Mr. Garson (the "**Movant**") did not object. The Motion to Reconsider suffers from several infirmities, each of which requires its denial.

---

[1] The Debtors in these cases are the following entities (the respective case numbers for each estate follows in parentheses): Canoo, Inc. (25-10094 BLS); EV Global Holdco LLC (25-10095 BLS); EV US Holdco Inc., (25-10096 BLS); Canoo Technologies Inc. (25-10099 BLS); Canoo Manufacturing (25-10097 BLS); and Canoo Sales, LLC (25-10098 BLS (collectively, the "**Debtors**").

2. Movant's decision not to seek expedited treatment of his Motion to Reconsider only compounds these failures. The Court should not reward Movant for sitting on the sidelines. By the time the Motion to Reconsider is finally heard by this Court on May 13, 2025, more than a month will have passed since entry of the Sale Order and closing of the sale thereunder.

3. Having failed to object (timely or otherwise) to the Sale Motion, of which he was admittedly aware, Movant is estopped from now challenging the Sale Order. Movant is not a creditor of the Debtor and therefore also lacks standing to challenge the Sale Order. In addition, Harbinger's appeal of the Sale Order, via the Divestiture Rule, limits this Court's ability to modify or vacate the Sale Order.

4. Under the circumstances, the Motion to Reconsider is also not timely under Rule 60(b). By his own admission, Movant was aware of the proposed sale and sale process by no later than April 3, 2025. *See* Motion at ¶5. Nearly a week passed before (i) the sale hearing was held and (ii) the Sale Order was entered on April 9, 2025 D.I. 141], and even more time was allowed to pass until the sale closed on April 11, 2025 [D.I. 155]. Neither the sale, nor the Sale Hearing on April 9, 2025, nor the closing of the sale were a surprise to Movant.[2] Each came and went without *any* objection by Mr. Garson. Movant did not attend the Sale Hearing and does not allege that he requested an extension of time to object and was rebuffed. Movant then waited *another two weeks* to file the Motion to Reconsider, which was nearly three weeks from when Movant himself admits he was aware of the sale process and proposed sale and nearly two weeks after the sale closed.

---

[2] Mr. Garson's insistence that he was unaware that the sale process was moving forward based on the implications allegedly derived from his interpretation of e-mails from the Trustee's counsel flies in the face of the plain language of the Asset Purchase Agreement on file since March 4, 2025 which stated that "to the extent possible, the Parties hereby agree to have the Closing occur on the date on which the Sale Order has been entered by the Court." (APA Section 2.7).

5. Movant's self-serving challenges to the Sale Order also fall short. Movant did not actually make an offer, even after being advised that the Trustee would consider higher and better offers pursuant to a negotiated fiduciary out. Any offer by Movant, a United Kingdom resident, was also subject to legitimate concerns about whether it would be subject to review and approval by the Committee on Foreign Investment in the United States ("**CFIUS**"), which could imperil any alternative sale transaction to Mr Garson. Noticeably absent from the Motion to Reconsider is any evidence of an actionable offer free of material contingencies, and which is or would have been suitable under the facts and circumstances of these cases.

6. The Sale Motion and related documents were clear that time was of the essence. The uncontroverted record reflects that the Trustee investigated the circumstances surrounding the Aquila secured loan and reasonably determined that a preference attack was unlikely to succeed. The process was not unduly rushed, as claimed in the Motion to Reconsider, but reflected the economic and other realities of these cases.

7. In reality, only WHS presented an actionable bid to the Trustee, and the transaction approved by this Court was the "culmination of several weeks of discussions" that were "hard fought" under circumstances where time was clearly of the essence to preserve and maximize the value of the Debtors' estates. *See* Transcript of April 9, 2025 Hearing, attached as Exhibit A hereto (the "**April 9 Transcript**") at pp. 13-14. Indeed, the WHS offer was the only actual offer presented, and whether a portion of its credit bid could be subject to attack is irrelevant – the price received, even if a portion of the credit bid is not counted, still exceeds the independent appraisal obtained from Hilco. *See* Declaration of Jeoffrey L. Burtch in Support of Trustee's Motion for Entry of an Order Approving Sale of Assets [D.I. 136] (the "**Burtch Decl.**") at ¶ 18.

**Jurisdiction and Venue**

8. The United States Bankruptcy Court for the District of Delaware (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.

9. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and WHS confirms its consent pursuant to Rule 9013-1(f) of the Local Rules to the entry of a final order by the Court in connection with the Motion to Reconsider and this Objection to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

10. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**Background**

11. On January 17, 2025 (the "**Petition Date**"), the Debtors each filed a voluntary petition for relief under chapter 7 of Title 11 of the United States Code. On or about the Petition Date, the Office of the United States Trustee appointed Jeoffrey L. Burtch as interim chapter 7 Trustee (the "**Trustee**").

12. On March 4, 2025, the Trustee filed the *Chapter 7 Trustee's Motion for Entry of an Order: (A) Approving Asset Purchase Agreement Pursuant to 11 U.S.C. § 363 and (B) Granting Related Relief* [D.I. 51] (the "**Sale Motion**").

13. Objections to the Sale Motion were due on March 28, 2025, which deadline was extended for certain parties. Movant did not request an extension of the objection deadline.

14. After an evidentiary hearing on April 9, 2025 (the "**Sale Hearing**"), the Court entered the *Order: (A) Approving Asset Purchase Agreement Pursuant to 11 U.S.C. § 363 and (B) Granting Related Relief* [D.I. 141] (the "**Sale Order**").

15. The sale pursuant to the Sale Order closed on April 11, 2025. See *Notice of Closing of Sale* filed at D.I. 155. On April 15, 2025, Harbinger Motors, Inc. filed a Notice of Appeal of the Sale Order [D.I. 151] (the "**Harbinger Notice of Appeal**").[3] No party has sought a stay of the Sale Order.

16. Nearly two weeks later, Movant filed the Motion to Reconsider on April 23, 2025. Movant did not seek expedited treatment of the Motion to Reconsider.

## Objection

**A. Movant's Failure to Object to the Sale, At Any Time, Dooms its Motion; Movant Does Not Meet the Standards for Reconsideration.**

17. By Movant's own admission, neither the sale, nor the Sale Hearing on April 9, 2025, nor the closing of the sale were a surprise to Mr. Garson. At each turn, Movant was able to participate, submit a fulsome bid, or object to the sale. He did none of these. While Movant cites multiple sources for the applicable standard(s), the Motion to Reconsider is surprisingly sparse with respect to facts.[4]

18. The standards governing a motion for reconsideration are well-settled in the Third Circuit. A motion for reconsideration may be granted only where: (i) there has been an intervening change in controlling law; (ii) new evidence has become available; or (iii) there is a

---

[3] Harbinger's appeal presents the following issue: "Whether the Bankruptcy Court erred by approving a provision in an Asset Purchase Agreement in which the Chapter 7 Trustee surrendered his fiduciary duty to act in the best interests of the estates by giving control over the disposition of an unencumbered estate asset to an unrelated third-party?" *See Appellant's Statement of Issues to be Presented on Appeal and Designation of Items to be Included in the Record on Appeal* [D.I. 168]. WHS reserves any and all rights with respect to the appeal.

[4] WHS respectfully disagrees with Movant's factual assertions, and reserves all rights with respect thereto, including at any hearing on the Motion to Reconsider.

need to prevent manifest injustice or correct a clear error of fact or law. *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010).

19. Courts considering motions for reconsideration under Rule 59(e), made applicable here by Bankruptcy Rule 9023, have held that a "'clear error of law or fact' requires a finding that the error is 'plain and indisputable . . . amount[ing] to a complete disregard of the controlling law or the credible evidence in the record.'" *In re Energy Future Holdings Corp.*, 575 B.R. 616, 629 (Bankr. D. Del. 2017).

20. When a court is considering its own judgment, "extraordinary circumstances" must be present to justify the use of Rule 60(b), made applicable here by Bankruptcy Rule 9024, to vacate the judgment. *Id.* at 630. A movant "bears a heavy burden" in showing that relief is appropriate under Rule 60(b). *Id.* at 631. Under both Rule 9023 and Rule 9024 "'[t]he purpose of a motion for reconsideration ... is to correct manifest errors of law or fact or to present newly discovered evidence.'" *Id.* at 631.

21. Movant did not object to the Sale Motion. This alone precludes the relief he seeks. A motion for reconsideration may not be used as a vehicle to "relitigate issues the Court has already decided," nor should Bankruptcy Rule 9023 "... be used to advance arguments that a party could have made before judgment, but neglected to do so." *Id.* at 628.

22. Movant's "substantive" arguments fare no better. In essence, Movant argues that: (i) he may have made a topping bid (but did not); (ii) the Court overlooked or misapprehended the facts (it did not); or (iii) the sale transaction should have been subject to heightened scrutiny (it was).

23. Movant did not actually make an actionable offer, even after being advised that the Trustee would consider higher and better offers pursuant to a negotiated fiduciary out. Any

offer by Movant was also subject to legitimate CFIUS concerns, which could imperil any alternative sale transaction. *See* Burtch Decl. at ¶ 16; April 9 Transcript at p. 16. The Court was fully apprised of and aware of WHS' insider status.

24. Because WHS was an insider and appreciated that the transaction would come under heightened scrutiny, WHS agreed to give the Trustee a broad fiduciary out to accept another deal if the Trustee believed his fiduciary duties required him to do so but received none of the customary bidder protection provisions accorded to an initial bidder acting as a stalking horse: no break-up fee; no expense reimbursement; and no right of last refusal to submit a topping bid. *See generally* Sale Motion.

25. The uncontroverted record reflects that the Trustee investigated the circumstances surrounding the Aquila secured loan and reasonably determined that a preference attack was unlikely to succeed. Nothing in the Motion to Reconsider changes the fact that the sale was the "culmination of several weeks of discussions" that were "hard fought" under circumstances where time was clearly of the essence to preserve and maximize the value of the Debtors' estates. *See generally id.* ¶¶ 7-19.

**B. WHS is a Good Faith Purchaser Entitled to the Protections of Section 363(m).**

26. Section 363(m) of the Bankruptcy Code provides that

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

27. The Third Circuit has recognized that courts have "turned to traditional equitable principles, holding that phrase encompasses one who purchases in 'good faith' and for

7

'value.'" *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986). Such a finding can be set aside only if there is "admissible evidence of bad faith" sufficient to allow the Court to say "that it was clear error for the bankruptcy judge to conclude that the sale occurred in good faith." *In re Culp, 545 B.R. 827, 844* (D. Del. 2016).

28. It is well established that a party's status as an insider does not automatically prevent it from being a purchaser in good faith. *In re HDR Holdings, Inc.*, 2020 WL 6561270, at * 5 (D. Del. Nov. 9, 2020). A sale to an insider, without more, does not establish a lack of good faith. *Id.* Good faith refers to the conduct of the purchaser in the course of the sale proceedings. *Abbots Dairies*, 788 F.2d at 147. Misconduct that "would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *Id.* The Court's evaluation should place an emphasis on conduct in the course of the sale proceedings. *Id.*

29. Paragraph O of the Sale Order expressly provides:

> The transactions contemplated under the APA were negotiated by the Trustee and Buyer at arm's length, without collusion, and in good faith within the meaning of section 363(m) of the Bankruptcy Code. Buyer has not engaged in any collusion or misconduct, is a good faith purchaser under section 363(m) of the Bankruptcy Code, is entitled to all of the protections afforded thereby, and otherwise has proceeded in good faith in all respects in connection with this proceeding in that: (a) Buyer recognized that the Trustee was free to deal with any other party interested in acquiring the Purchased Assets; (b) Buyer made the highest or otherwise best offer for the Purchased Assets; (c) all agreements or arrangements entered into by Buyer in connection with the transactions have been disclosed; and (d) the negotiation of the APA and any other agreements or instruments related thereto was in good faith.

Sale Order at ¶ O.

As the Court observed at the Sale Hearing:

> Case law teaches that the good [faith] finding largely requires a determination that no insider is receiving an unfair or inappropriate benefit. Again, we have certainly

8

> an adequate and complete record developed today of the process by which Mr. Burtch, who has been doing this for a long time, undertook his assignment, has marketed the asset, has identified a purchaser. That purchaser is, again, fully disclosed. Mr. Aquila has a prior relationship with the company. That is necessary to disclose but not a barrier or impediment to the sale transaction that is before me. So, I am satisfied that the proposed transaction is proceeding in good faith.

April 9 Transcript at p. 78.

30. The Motion to Reconsider falls far short of the required showing that this Court committed a clear error in making these good faith findings. Movant alleges (i) "a pattern of insider control and a rushed sale process that denied the estate the benefit of fair market competition," and (ii) "events in the months leading up to the Petition Date … raise the appearance of impropriety that warrants further scrutiny by the Court." *See* Motion to Reconsider at ¶¶ 37-38.

31. As noted above, while the Motion to Reconsider cites multiple sources for the applicable legal standard(s), it is surprisingly sparse with respect to facts. Movant's focus on WHS' insider status is misplaced. Similarly, his two primary arguments fall far short of the level needed to establish fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.

32. In the course of his negotiation of the Sale to WHS, the Trustee through counsel specifically investigated the bona fides of the Aquila secured loan. WHS provided detailed facts and circumstances regarding the origin of the loan, the fact that it had always been intended by all parties, including the independent Board of Directors advised by independent counsel, to be a secured loan, that the unsecured advances had been made on an emergency basis to deal with the Debtors' urgent financial needs while the terms of the secured loan were being negotiated, scrutinized and finalized by the Board and its counsel, that none of the emergency advances were repaid and that counsel to WHS believed that, if challenged as a preference, the secured loan

9

would be protected, inter alia, by the contemporaneous exchange for new value provisions of Section 547(c)(1) of the Bankruptcy Code.

33. The sale and sale process were driven by the economic and other realities of these cases, with full disclosure, and negotiated and overseen by a Trustee and professionals on both sides with decades of experience before this Court.

### C. The Divestiture Rule Precludes this Court from Vacating the Sale Order.

34. An appeal divests the lower court of any further jurisdiction over the subject of the appeal. *See Griggs v. Provident Consumer Disc. Co.,* 459 U.S. 56, 58 (1982) ("The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."); *Venen v. Sweet*, 758 F.2d 117, 120–21 (3d Cir. 1985) ("'Divest' means what it says—the power to act, in all but a limited number of circumstances, has been taken away and placed elsewhere."); *Bialac v. Harsh Inv. Corp. (In re Bialac)*, 694 F.2d 625, 627 (9th Cir. 1982) ("Even though a bankruptcy court has wide latitude to reconsider and vacate its own prior decisions, not even a bankruptcy court may vacate or modify an order while on appeal.").

35. Bankruptcy courts may not exercise jurisdiction over those issues which, although not themselves on appeal, nevertheless so impact those on appeal as to effectively circumvent the appeal process. *In re Southold Development Corp.,* 129 B.R. 18, 19 (E.D.N.Y. 1991). Courts have accordingly recognized a distinction in the divestment of jurisdiction between acts undertaken to enforce the judgment and acts which expand upon or alter it; the former being permissible and the latter prohibited. *Dicola v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. (In re Prudential Lines, Inc.)*, 170 B.R. 222, 243 (S.D.N.Y. 1994).

36. Here, the Harbinger Notice of Appeal divested this Court of jurisdiction to modify or vacate the Sale Order. Any modification or vacating of the Sale Order would necessarily alter its terms, and impermissibly and substantially affect the appeal.

## CONCLUSION

WHEREFORE, WHS respectfully requests that the Court (i) deny the Motion to Reconsider and (ii) grant such other relief as is just and proper.

| | |
|---|---|
| Dated: May 6, 2025<br>Wilmington, Delaware | **GREENBERG TRAURIG, LLP**<br><br> /s/ Dennis A. Meloro<br>Anthony W. Clark (DE Bar No. 2051)<br>Dennis A. Meloro (DE Bar No. 4435)<br>222 Delaware Avenue, Suite 1600<br>Wilmington, DE 19801<br>Telephone: (302) 661-7000<br>Email: Dennis.Meloro@gtlaw.com<br>　　　　Anthony.Clark@gtlaw.com<br><br>-and-<br><br>J. Gregory Milmoe (admitted *Pro Hac Vice*)<br>One International Place<br>Boston, MA 02110<br>Telephone: (617) 310-6064<br>Email: milmoeg@gtlaw.com<br><br>*Counsel to WHS Energy Solutions, LLC* |