# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>CANOO INC. *et al.*,[1]<br><br>　　　　Debtors. | Chapter 7<br><br>Case No. 25-10094 (BLS)<br><br>(Jointly Administered)<br><br>**Objection Deadline: Jan. 7, 2026, at 4:00 p.m. ET**<br>**Hearing Date: TBD** |

## CHAPTER 7 TRUSTEE'S MOTION (I) TO ENFORCE SALE ORDER AND (II) FOR A FINDING OF CONTEMPT AGAINST HARBINGER MOTORS, INC., JOHN HARRIS, WILLIAM EBERTS, PHILLIP WEICKER, ALEXI CHARBONNEAU, AND MICHAEL FIELKOW

Jeoffrey L. Burtch, solely in his capacity as chapter 7 trustee (the "Trustee") for the bankruptcy estates (the "Estates") of the above-captioned debtors (the "Debtors"), hereby files this motion (the "Motion") pursuant to 11 U.S.C. § 105 for entry of an order: (i) enforcing the *Order (A) Approving Asset Purchase Agreement and Sale of the Debtor's Assets Pursuant to 11 U.S.C. § 363, and (B) Granting Related Relief* [D.I. 141] (the "Sale Order"), a copy of which is attached hereto as **Exhibit 1**; (ii) enjoining Harbinger Motors, Inc. ("Harbinger"), John Harris, William Eberts, Phillip Weicker, Alexi Charbonneau, and Michael Fielkow (collectively, the "Harbinger Defendants") from collaterally attacking the Sale Order in the litigation pending as *Canoo Technologies, Inc. vs. Harbinger Motors, Inc., et al.*, Case No. 2:22-cv-09309-FLA-JC (the "Harbinger Litigation") in the United States District Court for the Central District of California, Western Division (the "California District Court"); (iii) holding the Harbinger Defendants in contempt of court for interfering with the rights of WHS Energy Solutions, LLC (the "Buyer") and

---

[1] The Debtors in these cases are the following entities (the respective case numbers for each estate follows in parentheses): Canoo, Inc. (25-10094 BLS); EV Global Holdco LLC (25-10095 BLS); EV US Holdco Inc., (25-10096 BLS); Canoo Technologies Inc. (25-10099 BLS); Canoo Manufacturing, LLC (25-10097 BLS); and Canoo Sales, LLC (25-10098 BLS).

the Estates in the Harbinger Litigation; (iv) awarding monetary sanctions against the Harbinger Defendants to compensate the Trustee, Trustee's retained counsel, and the Estates for all fees and costs they have incurred and will incur as a result of the Harbinger Defendants' contemptible conduct; (v) awarding continuing monetary sanctions pending the Harbinger Defendants' withdrawal of their *Motion for Terminating Sanctions or, in the Alternative, to Disqualify Munck Wilson Mandala LLP*, Case No. 2:22-cv-09309-FLA-JC, D.I. 324 (the "Sanctions Motion") in the Harbinger Litigation, a copy of which is attached hereto as **Exhibit 2**; and (vi) awarding punitive monetary sanctions for the Harbinger Defendants' vexatious and defamatory allegations against the Trustee. In support of the Motion, the Trustee respectfully states as follows:

## JURISDICTION, CORE NATURE AND VENUE

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. The statutory predicate for the relief requested herein is section 105 of title 11 of the United States Code (the "Bankruptcy Code").

3. Pursuant to Local Rule 9013-l(f), the Trustee consents to the entry of a final order with respect to this Motion if it is determined that the Court lacks adjudicatory authority under Article III of the United States Constitution to enter such final order absent consent of the parties.

## PRELIMINARY STATEMENT

4. In a public filing in the pre-petition Harbinger Litigation pending in the California District Court, the Harbinger Defendants have accused the Trustee, a licensed attorney and

appointed bankruptcy estate fiduciary in this jurisdiction, of committing a federal crime by violating 18 U.S.C. § 201, titled "Bribery of public officials and witnesses." The Harbinger Defendants specifically accuse the Trustee of violating section 201(c)(2), which makes it a federal crime for one to "give[], offer[], or promise[] anything of value to a person, for or because of the testimony . . . given or to be given by such person as a witness upon a trial, hearing, or other proceeding, before any court." *See* Sanctions Motion, at 10 (quoting 18 U.S.C. § 201(c)(2)). A violation of 18 U.S.C. § 201(c) carries a potential penalty of imprisonment for up to two years. *See* 18 U.S.C. § 201(c).

5. The specific conduct constituting the federal felony, the Harbinger Defendants argue, is the Trustee's fully and publicly disclosed—and Bankruptcy Court approved—agreement to pay ten (10) percent of any net recovery on the Harbinger Litigation (the "Ten Percent Recovery") to the Buyer, as a piece of a larger sale of substantially all of the pre-petition assets of the Debtors pursuant to section 363 of the Bankruptcy Code (the "Sale"). During the hearing held in this Court regarding the Sale eight (8) months ago, Harbinger represented that "Harbinger does not object to the transfer of the 10 percent interest of the net Harbinger recovery to the buyer." *See* Transcript of Hearing Held Apr. 9, 2025, D.I. 147 (hereinafter, the "Transcript"), at 35:4-35:17. A true and correct copy of the Transcript is attached hereto as **Exhibit 3**. This Court thereafter entered a Sale Order approving the Sale, and explicitly rendering a finding of good faith under section 363(m) of the Bankruptcy Code. Harbinger then appealed the Sale Order on other grounds, raising no objection regarding the Ten Percent Recovery.[2]

---

[2] *See* Appellant's Reply Brief, C.A. No. 1:25-cv-00461 (D. Del.), D.I. 15, at 4 ("The Veto Right, not the apportionment of the 'net cash recovery' between the Buyer and the Estates, is the problem and the sole subject of this appeal.")

6. Now, before a different court, the Harbinger Defendants are characterizing the Trustee's agreement to pay the Ten Percent Recovery to the Buyer as a federal crime, a violation of the Trustee's professional responsibilities as a licensed attorney, and a basis for either the Harbinger Litigation to be dismissed or the Trustee's retained intellectual property litigation counsel—who were entirely uninvolved in the negotiation or litigation of the Sale—to be disqualified. This is a transparent and vexatious collateral attack on the Sale Order, and the Trustee respectfully requests for this Court to enforce the Sale Order and hold the Harbinger Defendants in contempt of court.

## BACKGROUND

7. On January 17, 2025 (the "Petition Date"), the Debtors filed voluntary petitions with the Court for relief under chapter 7 of the Bankruptcy Code, commencing the above-captioned bankruptcy cases. On or about the Petition Date, the Office of the United States Trustee appointed the Trustee as the interim trustee for the Estates of the Debtors. The Section 341 Meeting of Creditors was held and concluded on February 26, 2025. The Trustee now serves as the trustee for these cases pursuant to section 702(d) of the Bankruptcy Code.

8. Prior to the Petition Date, the Debtors were a development stage American automotive technology company that developed and manufactured custom-built electric cargo vehicles for large commercial, government, and fleet customers globally. As part of the Debtors' limited prepetition operations, they possessed significant machinery and equipment on sites located in Texas, Oklahoma and California. The Debtors ceased all operations as of the Petition Date, and the Trustee is not operating the business.

9. Shortly after the Petition Date, the Trustee's counsel was contacted by the Debtors' former chief executive officer Anthony Aquila ("Aquila") regarding the purchase of substantially all of the Debtors' assets.

10. Thereafter, the Buyer, another entity with which Aquila is affiliated made an offer for a substantial portion of the Estates' assets. After arm's length negotiations, and the exchange of multiple counter offers, the Trustee and Buyer reached an agreement and entered into an Asset Purchase Agreement (the "APA").

11. On March 4, 2025, the Trustee filed the *Chapter 7 Trustee's Motion for Entry of an Order: Approving Asset Purchase Agreement Pursuant to 11 U.S.C. § 363 and (B) Granting Related Relief* [D.I. 51] (the "Sale Motion"), seeking entry of an order pursuant to sections 105, 363, and 365 of the Bankruptcy Code, approving the APA, which was attached as Exhibit "A" thereto.

12. Under the APA, the Buyer sought to purchase, *inter alia*: (a) all tangible personal property of the Debtors and the Estates, including, without limitation, machinery and tools (whether completed or in progress), computers, equipment, vehicles, trailers, and any other titled assets, equipment, supplies, and telephones; (b) all Intellectual Property (as that term is defined in the APA); (c) all intangible property rights, including without limitation, all of the Debtors' or the Estates' telephone numbers, fax numbers, e-mail addresses, websites, URLs, Internet domain names, corporate names, and social media accounts or "handles" relating in any manner to the Purchased Assets (as that term is defined in the APA); (d) all goodwill associated with the Purchased Assets, including goodwill associated with the Intellectual Property owned by the Estates or the Debtors and all rights under any confidentiality agreements executed by any third party for the benefit of the Estates or the Debtors to the extent relating to the Purchased Assets or

assumed liabilities (or any portion thereof), but excluding any confidentiality agreements relating solely to the retention of professionals by the Estates; (e) 10% of any net recovery in the Harbinger Litigation; (f) all inventory; and (g) all other assets in connection with, relating to or necessary for, or used in the operation of, the Purchased Assets (but, for the avoidance of doubt, excluding the Excluded Assets). *See* APA, Section 2.1.

13.     In exchange, the Buyer: (i) provided a credit bid of over $11 million; (ii) agreed to assume certain costs for removing the Debtors' assets and cleaning up hazardous materials at certain leased facilities which the Buyer did not assume, estimated by the buyer to amount to $2,314,982.00; and (iii) provided cash consideration in the amount of $4,000.000.00.

14.     With regard to the Harbinger Litigation, pursuant to Section 7.3 of the APA, the Buyer agreed to provide "commercially reasonabl[e] consultation and assistance to Seller and its counsel in the prosecution of the Harbinger Matter at Buyer's expense." In connection therewith, the Trustee agreed to pay the Buyer the Ten Percent Recovery, and the Parties agreed that any settlement of the Harbinger Matter would require the mutual consent of Seller and Buyer. *See* APA, Section 7.3.

15.     In their Sanctions Motion, the Harbinger Defendants acknowledge that: (a) by virtue of the sale, the Buyer "controls the Canoo evidence the Trustee and Munck Wilson need to litigate this case, including Canoo's computers and CAD files[;]"[3] and (b) that the Trustee, who was appointed after the Debtors ceased operations and commenced these bankruptcy cases, has no personal knowledge regarding the substance of the claims and evidence supporting same, and must look to Aquila and other representatives and employees of the Buyer, who were former key

---

[3] Sanctions Motion, at 5 (internal quotation marks omitted).

employees of the Debtors, for essential in-depth knowledge of the Debtors' business and familiarity with the basis for the claims in order to succeed in the Harbinger Litigation.[4]

16. However, in the Sanctions Motion, the Harbinger Defendants have deliberately misrepresented the agreement to pay the Buyer the Ten Percent Recovery as a payment for favorable testimony rather than consideration for the Buyer's assistance with the preparation for and prosecution of the Harbinger Litigation through the Buyer's and its representatives' and employees' provision of information, documents, and other evidence in connection with the claims asserted in the Harbinger Litigation.

17. When the Trustee filed the Sale Motion, disclosing the proposed sale and the accompanying APA, he clarified that the proposed sale was subject to higher and better offers on a court-approved timeline. Harbinger participated in the sale process, executed a non-disclosure agreement, gained access to the virtual data room available to potential bidders, and spent a considerable amount of time in the virtual data room. Harbinger chose not to submit a bid to purchase any, let alone all of the assets the Buyer offered to purchase.

18. Harbinger did, however, file a six-page self-described "limited objection" to the Sale Motion (*see* D.I. 113 (the "Limited Objection")), raising three discrete concerns regarding the proposed sale: (i) that the provision to the Buyer of Consent Rights for resolution of the Harbinger Litigation was improper because it hampered the Trustee's fiduciary responsibilities to the Estates and creditors thereof; (ii) that the Buyer should be made to pay a pro rata share of the costs of the Harbinger Litigation so the entire cost did not rest on the Estates; and (iii) the Buyer should be made to share, pro rata, the cost of any statutory award to Harbinger of attorney's fees if Harbinger prevails in the Harbinger Litigation. *See* D.I. 113, at ¶ 5. In its Limited Objection, Harbinger

---

[4] *See, e.g.*, Sanctions Motion, at 13.

requested that the Court: (i) strike from the sale any trade secrets and the Ten Percent Recovery; (ii) require that the APA be amended to eliminate the Consent Rights granted to the Buyer; and (iii) require the Buyer to assume a pro rata share of the costs of the Harbinger Litigation and any fee awards granted to Harbinger if Harbinger prevails in the Harbinger Litigation. *Id.* at 5-6.

19. On April 9, 2025, at the hearing held on the Sale Motion (the "Sale Hearing"), Harbinger abandoned its limited objection on the sale to the Buyer of Ten Percent Recovery, representing, through counsel, that: "Harbinger does not object to the transfer of the 10 percent interest of the net Harbinger recovery to the buyer. That's not the objection; the objection is the consent right and the objection is to the trade secrets" and the failure to require the buyer to bear a pro rata share of the costs and risk of the Harbinger Litigation. *See* Transcript, D.I. 147, at 35:4-35:18. With regard to the consent right, it was represented multiple times on the record of the Sale Hearing that the reason the consent right was granted to the Buyer was not the Buyer's interest in the Ten Percent Recovery. Rather, it was the Buyer's interest in the injunctive relief sought in the Harbinger Litigation that drove the Buyer's desire for a right to consent to the settlement of the claims asserted therein. *See, e.g.*, Transcript, at 58:20-58:24. As the party that now has title to the Debtors' intellectual property, the Buyer is at risk of continuing business harm from the actions of the Harbinger Defendants underlying the suit, and has an interest in the outcome of the Harbinger Litigation completely independent of the Trustee's and the Estates'.

20. At the Sale Hearing, this Court overruled Harbinger's objections to the proposed sale and made numerous related legal and factual findings, including but not limited to:

- "Harbinger complains of three separate aspects of the transaction that are before me, all of which, I think, are supported by the exercise of the debtors' [*sic*] business judgement and certainly are not inconsistent with his fiduciary obligations." D.I. 147, at 63:25-64:4.

- " . . . there is a concern that the buyer, while receiving a 10-percent return, is not providing anything meaningful in value, and, again, the record here indicates that this litigation is significant to the estate. There's significant value that Mr. Burtch believes is attributable to this litigation, but it has to be prosecuted and the cooperation and assistance of the purchaser, it seems to me, is necessary in order to effectively prosecute that litigation.  So, the commitment to cooperate, and on their own costs, to go through what will likely be additional discovery—litigation is expensive—and so I don't minimize the fact that they're not necessarily paying their share in the event of an adverse result.  I'm not satisfied that that is actually the case here, and in any event, even if it were, it is one piece of a larger negotiation as to which the debtor—the trustee—has determined that meaningful and significant value is coming." *Id.* at 65:17-65:25.

- "I don't believe that there is anything in the record that would support a challenge to the integrity of the sale process." *Id.* at 67:4-67:6.

- "Case law teaches under the Abbots Dairies case and its progeny in the Third Circuit that a trustee seeking to sell property of the estate needs to demonstrate that the proposed transaction reflects reasonable business judgment and that it is proceeding in good faith. And I am satisfied that Mr. Burtch has carried his burden on both counts." *Id.* at 77:8-77:13.

- "I am satisfied that the proposed transaction is proceeding in good faith. Case law teaches that the good [faith] finding largely requires a determination that no insider is receiving an unfair or inappropriate benefit.  Again, we have certainly an adequate and complete record developed today of the process by which Mr. Burtch, who has been doing this for a long time, undertook his assignment, has marketed the asset, has identified a purchaser. That purchaser is, again, fully disclosed. Mr. Aquila has a prior relationship with the company. That is necessary to disclose but not a barrier or impediment to the sale transaction that is before me. So, I am satisfied that the proposed transaction is proceeding in good faith.  In addition, based upon the record before me, I am satisfied that the purchaser has demonstrated that it is, in fact, a good faith purchaser and is, therefore, entitled to the protections attended thereto under Bankruptcy Code Section 363(m) and I would be prepared to enter an order so providing." *Id* at 78:4-78:16.

21. On the same day, the Bankruptcy Court entered the Sale Order, which includes,

*inter alia*, the following provisions:

  - "The transactions contemplated under the APA were negotiated by the Trustee and Buyer at arm's length, without collusion, and in good faith within the meaning of section 363(m) of the Bankruptcy Code. Buyer has not engaged in any collusion or misconduct, is a good faith purchaser under section 363(m) of

9

the Bankruptcy Code, and is entitled to all of the protections afforded thereby, and otherwise has proceeded in good faith in all respects in connection with this proceeding in that: (a) Buyer recognized that the Trustee was free to deal with any other party interested in acquiring the Purchased Assets; (b) Buyer made the highest or otherwise best offer for the Purchased Assets; (c) all agreements or arrangements entered into by Buyer in connection with the transactions have been disclosed; and (d) the negotiation of the APA and any other agreements or instruments related thereto was in good faith." Sale Order, D.I. 141, at ¶ O.

- "The Trustee and Buyer have not engaged in any conduct that would permit the APA or any transaction contemplated thereunder to be avoided under section 363(n) of the Bankruptcy Code." Sale Order, D.I. 141, at ¶ P.

- "The consummation of the sale pursuant to the APA will be a legal, valid, and effective sale of the Purchased Assets and will vest Buyer with all right, title, and interest of the Estates to the Purchased Assets . . . ." Sale Order, D.I. 141, at ¶ R.

22. After the Bankruptcy Court's entry of the Sale Order, Harbinger filed a Noice of Appeal thereof, raising only one solitary issue on appeal: "Whether the Bankruptcy Court erred by approving a provision in an Asset Purchase Agreement in which the Chapter 7 Trustee surrendered his fiduciary duty to act in the best interests of the estates by giving control over the disposition of an unencumbered estate asset to an unrelated third-party[.]" *See* Appellant's Statement of Issues to be Presented on Appeal and Designation of Items to be Included in the Record on Appeal, D.I. 168.

23. Harbinger's appeal (the "<u>Appeal</u>") is pending as C.A. No. 1:25-cv-00461-MN before the United States District Court for the District of Delaware (the "<u>Delaware District Court</u>"). The Appeal has been fully briefed, but the Delaware District Court has not yet opined on the merits.

24. Just six (6) months ago, in its Appellant Reply Brief filed in the Appeal, Harbinger confirmed that: (a) with regard to section 363(m) of the Bankruptcy Code, "regardless of th[e] appeal, no aspect of the validity of the Sale may be disturbed";[5] and (b) Harbinger "challenges

---

[5] Appellant's Reply Brief, C.A. No. 1:25-cv-00461-MN, D.I. 15, at 10.

only one part of one sentence in the APA—the Veto Right—which the Bankruptcy Court should never have approved over Appellant's narrow objection and which this Court can easily excise from the APA without affecting the validity of the Sale and without in any way divesting the Buyer of the wide array of assets it purchased, including the Harbinger Litigation."[6]

25.     Nevertheless, this month, eight (8) months after entry of the Sale Order and closing of the Sale, six (6) months after confirming in the Appeal that it had no intention of disturbing any party's interest in the Harbinger Litigation, and shortly after the close of discovery in the Harbinger Litigation, Harbinger filed the Sanctions Motion in the California District Court challenging terms of the Sale on bases that were or could have been raised by Harbinger prior to and during the Sale Hearing.  Moreover, shockingly, in the Sanctions Motion, the Harbinger Defendants have accused the Trustee's retained special counsel for the Harbinger Litigation, Munck Wilson Mandala, LLP ("Munck Wilson") with violating professional responsibility rules, and the Trustee himself with violating both federal criminal law and professional responsibility rules, for acting in accordance with this Court's Sale Order.[7]

26.     Specifically, with regard to the Trustee, the Harbinger Defendants argue in their Sanction Motion that:

> (a) The Trustee's sale of the Ten Percent Recovery in the Harbinger Litigation to the Buyer violates the Federal Bribery Statute and California Rule of Professional conduct 3.4(d);[8] and

---

[6] *Id.*
[7] The Sanctions Motion and the Trustee's response thereto have been fully briefed, and are scheduled for a hearing before the California District Court on January 14, 2026, at 2:30 p.m.  *See* Case No. 2:22-cv-09309-FLA-JC, D.I. 331.  The Trustee has filed this Motion in the Bankruptcy Court in light of this Court's greater familiarity with the context of the Sale and the prior litigation of the issues raised by the Harbinger Defendants in the Sanctions Motion, as well as this Court's retained jurisdiction "to, among other things, interpret, implement, and enforce the terms and provisions of this [Sale] Order and the APA . . . and to adjudicate, if necessary, any and all disputes or actions concerning or relating in any way to the sale." Sale Order, D.I. 141, at ¶ 27.
[8] Sanctions Motion, at 10.

11

(b) The only way to remedy the prejudice is for the California District Court to terminate the Harbinger Litigation or disqualify Munck Wilson.

## RELIEF REQUESTED

27. By this Motion, the Trustee seeks entry of an order in substantially the form of the proposed order attached hereto, (i) enforcing the Sale Order; (ii) enjoining the Harbinger Defendants from collaterally attacking the Sale Order in the Harbinger Litigation; (iii) holding the Harbinger Defendants in contempt of court for interfering with the rights of the Buyer and the Estates in the Harbinger Litigation; (iv) awarding monetary sanctions against the Harbinger Defendants to compensate the Trustee, Trustee's retained counsel, and the Estates for all fees and costs they have incurred and will incur as a result of the Harbinger Defendants' contemptible conduct; (v) awarding continuing monetary sanctions pending the Harbinger Defendants' withdrawal of their Sanctions Motion in the Harbinger Litigation; (vi) awarding punitive sanctions against the Harbinger Defendants for their defamatory allegations against the Trustee in an amount appropriate and sufficient to deter future similar misconduct; and (vii) granting such other and further relief as is just and proper.

## BASIS FOR RELIEF REQUESTED

### A. This Court has the Authority to Enforce the Sale Order.

28. Section 105(a) of the Bankruptcy Code vests this Court with the power to "tak[e] any action or mak[e] any determination necessary or appropriate to enforce or implement court orders or rules." 11 U.S.C. § 105(a). *In re Marcus Hook Development Park, Inc.*, 943 F.2d 261, 266 (3d Cir. 1991) (quoting *In re Radco Merchandising Services, Inc.*, 111 B.R. 684, 688-89 (N.D. Ill. 1990)); *In re Protarga, Inc.*, 329 B.R. 451, 479 (Bankr. D. Del. 2005) ("In the exercise of this authority, courts have inherent powers to enforce compliance with and execution of their lawful orders.").

29. This Court's interpretation and enforcement of sale orders entered in bankruptcy cases pending before it constitutes core proceedings under the Bankruptcy Code. *See In re Insilco Techs., Inc.*, 351 B.R. 313, 319 (Bankr. D. Del. 2006) (citing *Centennial & Allegheny Univ. Hosps.-East Tenet Healthsystem Phila., Inc. v. Nat'l Union of Hosp. & Health Care Emples., AFSCME, Dist. 1199C (In re Allegheny Health, Educ. & Research Found.)*, 383 F.3d 169, 175-76 (3d Cir. 2004)).

30. Orders approving the sale of assets, like the Sale Order issued by the Court in this case, are core proceedings. See 28 U.S.C. § 157(b)(2)(N). Enforcement and interpretation of orders issued in core proceedings are also core proceedings within the bankruptcy court's jurisdiction. *See In re FormTech Industries, LLC*, 439 B.R. 352, 257 (Bankr. D. Del. 2010) (citing *Travelers Indem. Co. v. Bailey,* 557 U.S. 137, 129 S.Ct. 2195, 2205 (2009) (holding that "the Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders."); *See In re Insilco Techs., Inc.*, 351 B.R. 313, 319 (Bankr. D. Del. 2006) (citing *Centennial & Allegheny Univ. Hosps.-East Tenet Healthsystem Phila., Inc. v. Nat'l Union of Hosp. & Health Care Emples., AFSCME, Dist. 1199C (In re Allegheny Health, Educ. & Research Found.)*, 383 F.3d 169, 175-76 (3d Cir. 2004)).

31. Moreover, pursuant to the Sale Order itself, the Bankruptcy Court retained jurisdiction "to, among other things, interpret, implement, and enforce the terms and provisions of this [Sale] Order and the APA . . . and to adjudicate, if necessary, any and all disputes or actions concerning or relating in any way to the sale." Sale Order, D.I. 141, at ¶ 27.

**B. The Harbinger Defendants' Sanctions Motion is a Collateral Attack on the Sale Order.**

32. "A collateral attack on a judgment is 'an attempt to impeach the judgment by matters [outside] the record . . . to avoid, defeat, or evade it or deny its force and effect, in some incidental proceeding not provided by law for the purpose of attaching it.'" *In re RTI Holding*

*Company, LLC*, 2021 WL 4994414, at *4 (Bankr. D. Del. Oct. 27, 2021) (quoting *Agape Motorcoach Retreat, LLC v. Brintle*, 523 F. App'x 948, 955 (4th Cir. 2013)). "By definition ... [a] 'collateral attack' is '[a]n attack on a judgment in a proceeding other than a direct appeal.'" *Id.* (quoting *United States v. Braddy*, 837 F. App'x 112, 114 (3d Cir. 2020) (quoting Black's Law Dictionary 298 (9th ed. 2009)). Generally, a party cannot challenge the validity of an existing judgment, and a final judgment precludes a collateral attack on a court's order. *Id.*

33. "A crucial element that bars a collateral attack on a judgment is whether the party had the opportunity to litigate their claims." *Id.* (citing *Brown v. United States*, 508 F.2d 618, 631 (3d. Cir. 1974)). "A § 363 sale . . . puts the entire world on notice, including nonparties." *In re RTI Holding Company, LLC*, at *4 (citing *GAF Holdings, LLC v. Rinaldi (In re Farmland Indus.)*, 376 B.R. 718, 729 (Bankr. W.D. Mo. 2007), *aff'd*, 639 F.3d 402 (8th Cir. 2011) ("[A] proceeding under section 363 is an in rem proceeding. It transfers property rights, and property rights are rights good against the world, not just against parties to a judgment or persons with notice of the proceeding"). A sale order is shielded from collateral attack by the virtue of the nature of rights transferred under 11 U.S.C. § 363. *Id.* (citing *In re Farmland Indus., Inc.*, 376 B.R. at 729).

34. In *In re Farmland Indus., Inc.*, 376 B.R. at 726, the Bankruptcy Court for the Western District of Missouri held that an unsuccessful bidder at an auction sale was collaterally estopped from bringing a tortious interference claim against the successful bidder. Therein, the bankruptcy court noted that "[e]ven though an action has an independent purpose and contemplates some other relief, it is a collateral attack if it must in some fashion overrule a previous judgment." 376 B.R. at 726 (quoting *Miller v. Meinhard–Commercial Corp.,* 462 F.2d 358, 360 (5th Cir.1972) (citing *Mitchell v. Village Creek Drainage Dist.,* 158 F.2d 475, 478 (8th Cir.1946), in the context of a collateral attack on a bankruptcy court order)). The bankruptcy court found that

it did not matter that the unsuccessful bidder did not seek to undo the sale with regard to the title conferred thereby; if the unsuccessful bidder succeeded on its claims, it would, in effect, "overrule key findings in the Sale Orders" and "undo the economics of the sale[.]" *Id.* The court intimated that this seemed to be the purpose and intent of the unsuccessful bidder's actions, noting that "[t]he very gist of this suit is that the sale of the [assets] to [the buyer] was improper," despite the fact that there were "no fewer than six previous findings of the Court confirming the propriety of the sale" and—most importantly—a finding that the sale was arm's length, without collusion, and in good faith pursuant to section 363(m) of the Bankruptcy Code. *Id.* at 727. The court found that the relevant sale orders were binding on the unsuccessful bidder pursuant to both collateral estoppel and "the *in rem* protections conferred on [the purchaser] under 11 U.S.C. § 363(m)." *Id.* at 726.

35. Harbinger was involved in the sale process and had ample opportunity to litigate the propriety of the sale of the Ten Percent Recovery, among the many assets sold to the Buyer. Harbinger even initially contested the Ten Percent Recovery provision in its Limited Objection, but chose to explicitly abandon that basis of its objection to the proposed sale at the Sale Hearing. *See Transcript*, D.I. 147, at 35:4-35:17 ("Harbinger does not object to the transfer of the 10 percent interest of the net Harbinger recovery to the buyer.").

36. Harbinger then appealed the Sale Order, but, again, chose not to contest the Ten Percent Recovery provision on appeal. Harbinger also did not move for reconsideration of the Sale Order, and has not moved for relief from the Sale Order under Federal Rule of Civil Procedure 60, made applicable to bankruptcy cases pursuant to Federal Rule of Bankruptcy Procedure 9024.

37. Instead, Harbinger and its chief executives and officers have filed their vexatious and inflammatory Sanctions Motion in the California District Court, outside of the Bankruptcy

Court's view, alleging that the Sale approved and authorized by the Bankruptcy Court actually constitutes a federal crime and breach of ethical responsibilities, and the only solution is to terminate the Harbinger Litigation, thereby depriving the Buyer of the Ten Percent Recovery and injunctive relief and depriving the Debtors' Estates of a valuable litigation asset. In effect, the Harbinger Defendants seek to collaterally attack the Sale Order to achieve a result they could not otherwise achieve on appeal, given that they chose not to contest the Ten Percent Recovery at the Sale Hearing, and, even if they had, would be barred from reversing the sale of the Ten Percent Recovery by virtue of the Court's finding of good faith in the Sale Order and section 363(m) of the Bankruptcy Code, which provides that a reversal or modification of a sale on appeal does not affect the validity of a sale made to a good faith purchaser.

### C. The Harbinger Defendants Should be Held in Contempt of Court.

38.     The inherent authority of the Bankruptcy Court under section 105(a) of the Bankruptcy Code to enforce compliance with and execution of its orders gives the Bankruptcy Court the power to hold parties in civil contempt. *See, e.g., In re Vaso Active Pharms., Inc.*, 514 B.R. 416, 421-22 (Bankr. D. Del. 2014); *In re Baker*, 390 B.R. 524, 531 (Bankr. D. Del. 2008); *In re Anderson*, 348 B.R. 652, 661 (Bankr. D. Del. 2006).

39.     "A plaintiff must prove three elements by clear and convincing evidence to establish that a party is liable for civil contempt: (1) that a valid order of the court existed; (2) that the defendants had knowledge of the order; and (3) that the defendants disobeyed the order." *In re Vaso Active Pharms.*, 514 B.R. at 422.

40.     In this case, Harbinger was present at the Sale Hearing on April 9, 2025, and had an opportunity to raise its concerns to the Court and be heard. Harbinger was present to hear the Court overrule Harbinger's objections and approve the sale at the Sale Hearing, and counsel to

16

Harbinger received electronic notification of the entry of the Sale Order later that day. Notice to Harbinger and its executives and officers was demonstrably sufficient, because Harbinger in fact appealed the Sale Order on other grounds. Despite the numerous statements of the Court on the record of the Sale Hearing authorizing the entirety of the Sale and finding that the Trustee and the Buyer acted in good faith in connection therewith, and despite the same explicit holdings in the Sale Order, Harbinger has gone to another court to challenge the Sale and the good faith of the Trustee, his legal counsel, and the Buyer, going so far as claiming that the Trustee has committed a federal crime and breached his professional ethical responsibilities. In so doing, Harbinger "has acted with utter contempt toward the orders of this Court." *See In re Continental Airlines, Inc.*, 236 B.R. 318, 331 (Bankr. D. Del. 1999). The Trustee submits that a finding of civil contempt and the issuance of sanctions is warranted.

41. "[S]anctions for civil contempt serve two purposes: to coerce future compliance and to remedy any harm past noncompliance caused the other party." *Firstbank Puerto Rico v. Barclays Capital Inc. (In re Lehman Brothers Holdings Inc.)*, 2013 WL 6283572, at *4 (Bankr. S.D.N.Y. Dec. 3, 2013) (quoting *Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir.1996) (citation omitted)). Courts are "vested with wide discretion" to fashion a proper remedy to achieve future compliance *Id.* (citing *Weitzman v. Stein*, 98 F.3d at 719). Appropriate civil contempt sanctions may include costs, attorney's fees, and compensatory and punitive damages. *In re Fluke*, 305 B.R. 635, 644 (Bankr. D. Del. 2004).

42. Through this Motion, the Trustee seeks sanctions in the form of fees and costs incurred to compensate the Trustee, counsel to the Trustee, and the Estate for the fees and costs of litigating this Motion and responding to Harbinger's vexatious conduct and inflammatory allegations in the California District Court.

43. The Trustee also seeks for this Court to exercise its "wide discretion" to: (i) sanction the Harbinger Defendants for their collateral attack on the Sale Order and baseless and highly inflammatory allegations against the Trustee and his counsel; and (ii) ensure the Harbinger Defendants' future compliance with the Sale Order. For these reasons, in addition to requiring the Harbinger Defendants to compensate the Trustee and his counsel for all fees and costs attendant to the litigation of this Motion and the defense against the Sanctions Motion in the California District Court, the Trustee respectfully requests for this Court to require the Harbinger Defendants to withdraw their Sanction Motion, fine the Harbinger Defendants $1,000.00 for each day that they fail to withdraw their Sanctions Motion, and fine the Harbinger Defendants for making unfounded and defamatory[9] allegations against the Trustee in an amount deemed appropriate by this Court and sufficient to deter future misconduct and violations by the Harbinger Defendants.

## Conclusion

WHEREFORE, the Trustee respectfully requests that the Bankruptcy Court enter an order in substantially the form of the proposed order attached hereto, (i) enforcing the Sale Order; (ii) enjoining the Harbinger Defendants from collaterally attacking the Sale Order in the Harbinger Litigation; (iii) holding the Harbinger Defendants in contempt of court for interfering with the rights of the Buyer and the Estates in the Harbinger Litigation; (iv) awarding monetary sanctions against the Harbinger Defendants to compensate the Estates for the costs borne by the Trustee and the Estates as a result of the Harbinger Defendants' contemptible conduct; (v) awarding continuing monetary sanctions pending the Harbinger Defendants' withdrawal of their Sanctions Motion in

---

[9] In Delaware, a communication is defamatory per se if the communication imputes a crime. *See Wooleyhan v. Cape Henlopen School District*, C.A. No. 10-153 (D. Del. May 17, 2011) (citing *Spence v. Funk*, 396 A.2d 967, 969 n.1 (Del. 1978)).

...
...

the Harbinger Litigation; (vi) awarding punitive sanctions against the Harbinger Defendants for their defamatory accusations of criminal conduct on the part of the Trustee in in an amount deemed appropriate by this Court, in its discretion, to deter future misconduct and violations by the Harbinger Defendants ; and (vi) granting such other and further relief as is just and proper.

Dated: December 24, 2025                    Respectfully Submitted,

                                            COZEN O'CONNOR

                                            */s/ Mark E. Felger*
                                            Mark E. Felger (DE 3919)
                                            Gregory F. Fischer (DE 5269)
                                            1201 N. Market Street, Suite 1001
                                            Wilmington, DE 19801
                                            Telephone: (302) 295-2000
                                            mfelger@cozen.com
                                            gfischer@cozen.com

                                            *Counsel to Jeoffrey L. Burtch, Chapter 7 Trustee*