**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 7 |
| CANOO INC., *et al.*,[1] | Case No. 25-10094 (BLS) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: August 26, 2026, at 11:00 a.m. (ET)** **Objection Deadline: August 7, 2026, at 4:00 pm. (ET)** |

**TRUSTEE'S MOTION FOR ENTRY OF AN ORDER PURSUANT TO FED. R. BANKR. P. 9019 AUTHORIZING AND APPROVING SETTLEMENT AGREEMENT BETWEEN THE TRUSTEE AND THE HARBINGER DEFENDANTS**

Jeoffrey L. Burtch, chapter 7 trustee (the "Trustee") for the estates (the "Estates") of the above-captioned debtors (the "Debtors"), hereby files this motion (the "Motion") for entry of an order by the United States Bankruptcy Court for the District of Delaware (the "Court"), pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving the Trustee's Settlement Agreement (the "Settlement Agreement") with Harbinger Motors Inc. ("Harbinger"), John Henry Harris, William Eberts, Phillip Weicker, Alexi Charbonneau, and Michael Fielkow (collectively, the "Harbinger Defendants"). In support of this Motion, the Trustee respectfully states as follows:

**JURISDICTION, CORE NATURE AND VENUE**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

[1] The Debtors in these cases are the following entities (the respective case numbers for each estate follows in parentheses): Canoo Inc. (25-10094 BLS); EV Global Holdco LLC (25-10095 BLS); EV US Holdco Inc. (25-10096 BLS); Canoo Technologies Inc. (25-10099 BLS); Canoo Manufacturing, LLC (25-10097 BLS); and Canoo Sales, LLC (25-10098 BLS).

2. The statutory bases for the relief requested herein are 11 U.S.C. § 105(a) and Rule 9019(a) of the Bankruptcy Rules.

3. Pursuant to Rule 9013-l(f) of the Local Rules, the Trustee consents to the entry of a final order with respect to this Motion if it is determined that the Court lacks adjudicatory authority under Article III of the United States Constitution to enter such final order absent consent of the parties.

## BACKGROUND

4. On January 17, 2025 (the "Petition Date"), the Debtors filed voluntary petitions with the Court for relief under chapter 7 of the Bankruptcy Code, commencing the above-captioned bankruptcy cases (the "Chapter 7 Cases").

5. On or about the Petition Date, the Office of the United States Trustee (the "U.S. Trustee") appointed the Trustee as the interim trustee for the Estates of the Debtors. The Section 341 Meeting of Creditors was held and concluded on February 26, 2025. The Trustee now serves as trustee pursuant to Section 702(d) of the Bankruptcy Code.

6. Prior to the Petition Date, the Debtors were a development stage American automotive technology company that developed and manufactured custom-built electric cargo vehicles for large commercial, government, and fleet customers globally. As part of the Debtors' limited prepetition operations, they possessed significant machinery and equipment on sites located in Texas, Oklahoma, and California. The Debtors ceased all operations as of the Petition Date, and the Trustee is not operating the business.

7. On December 22, 2022, debtor Canoo Technologies, Inc. ( "Canoo Technologies") filed a complaint (the "Complaint") against Harbinger, Electron Transport Inc., John Henry Harris, William Eberts, Phillip Weicker, Alexi Charbonneau, Michael Fielkow, Benjamin Dusastre, Overture Climate VC, Schematic Ventures, LLC, Tiger Global Management, LLC, Ridgeline

Partners, LLC, Bharat Forge Limited, Ironspring, LLC, Jackson Moses, and Thor Industries, Inc.[2] in the United States District Court for the Central District of California, Western Division (the "California District Court"), thereby commencing *Canoo Technologies, Inc. v. Harbinger Motors, Inc., et al.*, Case No. 2:22-cv-09309-FLA-JC (the "Harbinger Litigation").

8. In the Complaint, Canoo Technologies alleged, among other things, that certain former Canoo employees misappropriated financial resources, business plans, human capital, trade secrets, and other intellectual property when they left Canoo and joined with other parties to establish a competing corporate entity, Harbinger. Canoo Technologies asserted damages including, but not limited to, loss of valuable business, loss of profits and future profits, and loss of goodwill, in an amount to be proven at trial. Canoo Technologies also asserted that the Defendants were unjustly enriched as a result of their theft of Canoo's trade secrets. The Defendants deny any wrongdoing.

9. After the commencement of the Chapter 7 Cases and the appointment of the Trustee, the Trustee was substituted as the plaintiff (the "Plaintiff") and real party in interest in the Harbinger Litigation.

10. On December 1, 2025, while discovery remained underway in the Harbinger Litigation, the Harbinger Defendants filed a *Motion for Terminating Sanctions or, in the Alternative, to Disqualify Munck Wilson Mandala, LLP*, Case No. 2:22-cv-09309-FLA-JC [D.I. 324] (the "Sanctions Motion") in the Harbinger Litigation, (i) claiming that the Trustee agreed to pay the former CEO of the Debtors a contingency fee in exchange for his participation in the Harbinger Litigation in violation the federal bribery statute, 18 U.S.C. § 201; (ii) claiming that the

[2] Since the filing of the Complaint, defendants Benjamin Dusastre, Electron Transport Inc., Overture Climate VC, Schematic Ventures, LLC, Ridgeline Partners, LLC, Ironspring, LLC, Jackson Moses, and Thor Industries, Inc. have been dismissed from the Harbinger Litigation.

Trustee's retained counsel in the Harbinger Litigation, Munck Wilson Mandala LLP ("Munck Wilson"), violated California Rule of Professional Conduct 3.4(d) by acquiescing in the contingency fee to the former CEO to the Debtors; and (iii) seeking dismissal of the Harbinger Litigation or, alternatively, to disqualify Munck Wilson.

11. The Trustee opposed the Sanctions Motion in the California District Court, and also filed the *Chapter 7 Trustee's Motion (I) to Enforce Sale Order and (II) for a Finding of Contempt Against Harbinger Motors, Inc., John Harris, William Eberts, Phillip Weicker, Alexi Charbonneau, and Michael Fielkow* (the "Contempt Motion") [D.I. 216] in this Court, seeking an order (i) enforcing the *Order (A) Approving Asset Purchase Agreement and Sale of the Debtor's Assets Pursuant to 11 U.S.C. § 363, and (B) Granting Related Relief* [D.I. 141] (the "Sale Order); (ii) enjoining the Harbinger Defendants from collaterally attacking the Sale Order in the Harbinger Litigation; (iii) holding the Harbinger Defendants in contempt of court for interfering with the rights of the buyer of the Debtors' assets by challenging the terms of the sale in the Sanctions Motion; (iv) awarding monetary sanctions against the Harbinger Defendants to compensate the Trustee, Trustee's retained counsel, and the Estates for all fees and costs they have incurred and will incur as a result of the Harbinger Defendants' conduct; (v) awarding continuing monetary sanctions pending the Harbinger Defendants' withdrawal of their Sanctions Motion; and (vi) awarding punitive monetary sanctions for the Harbinger Defendants' allegations against the Trustee in the Sanctions Motion.

12. At a hearing held on January 14, 2026, after the Sanctions Motion was fully briefed, the California District Court denied the Harbinger Defendants' Sanctions Motion. *See* Reply in Support of Contempt Motion, D.I. 288, Ex. 2.

13. The Contempt Motion before this Court has been fully briefed, but the associated hearing date has been continued to allow the Trustee and the Harbinger Defendants (together, the "Parties") to work toward a negotiated resolution of the issues raised therein and the claims asserted in the Harbinger Litigation.

14. Following arm's length negotiations over the past three to four months, the Parties agreed to terms to resolve and settle both the Harbinger Litigation and the Contempt Motion, and memorialized such terms in a binding term sheet (the "Binding Term Sheet").

15. Upon execution of the Binding Term Sheet, the Parties undertook to negotiate a long-form settlement agreement (the "Settlement Agreement"). On June 21, 2026, and June 25, 2026, the Trustee and the Harbinger Defendants, respectively, executed the Settlement Agreement, a true and correct copy of which is attached hereto as **Exhibit A**.[3]

16. In material part, the Settlement Agreement provides that:

a. In consideration of the settlement and releases set forth in the Settlement Agreement, Harbinger shall pay the Trustee a cash amount in monthly installments over a period of approximately nine (9) months, and issue to the Trustee shares of Harbinger common stock ("Harbinger Equity").

b. Within five (5) days after the Trustee's receipt of the first payment under the Settlement Agreement, in accordance with Federal Rule of Civil Procedure 41, the Trustee will file a stipulation of dismissal signed by all parties who have appeared in the Harbinger Litigation, seeking dismissal with prejudice of the Harbinger Litigation and all claims Plaintiff could have asserted therein. Upon release and dismissal, Plaintiff's rights will be for breach of the Settlement Agreement or the Binding Term Sheet.

c. The Trustee's agreement is conditioned on the entry of a final order of this Court approving the Settlement Agreement. Promptly after the execution of the Settlement Agreement, the Trustee agrees to file a motion seeking such Court approval and seeking for the financial terms of the Agreement to remain confidential by using commercially reasonable efforts to file under

[3] Contemporaneously herewith, the Trustee is filing a *Motion for Entry of an Order Authorizing Trustee to File Settlement Agreement with the Harbinger Defendants Under Seal* (the "Seal Motion"). If the Seal Motion is granted, parties in interest can obtain an unredacted copy of the Settlement Agreement by contacting the Trustee's counsel and signing a non-disclosure agreement.

seal and maintain the confidentiality of the Settlement Agreement and the Binding Term Sheet and, with respect to creditors, seek to provide any financial terms only after execution of a non-disclosure agreement or similar protection from dissemination an disclosure.

d. Promptly after entry of an order by this Court approving the Settlement Agreement, the Trustee will withdraw his Contempt Motion against the Harbinger Defendants.

e. If this Court does not approve the Settlement Agreement or Binding Term Sheet in whole or in part, the Settlement Agreement or the Binding Term Sheet will be null and void.

f. Effective five (5) days after the Trustee's receipt of the first payment called for under the Settlement Agreement, the Trustee shall release the Harbinger Defendants and Harbinger's predecessors, parent companies, subsidiaries, successors, assigns, officers, directors, shareholders, owners, investors, employees, agents, attorneys, affiliates, and contractors (collectively, the "Defendant Releasees") from any and all claims, whether known or unknown, arising from or related to any and all acts and omissions from the beginning of time through the date of the Settlement Agreement that relate to or arise out of the facts and Claims that are the subject matter of the Harbinger Litigation or the Contempt Motion. In connection with such released claims, the Trustee waives unknown claims based on facts that may be uncovered at a later date, and waives any and all rights under § 1542 of the California Civil Code. In return, each of the Harbinger Defendants releases any claims asserted against the Trustee and the Debtors' estates and must withdraw any proof of claim they have filed in the Debtors' cases within five (5) days after entry of a final order approving the Settlement Agreement.

g. The Trustee is responsible for any taxes due and payable as a result of payments made and stock issued by Harbinger under the Settlement Agreement. Accordingly, unless otherwise stated, all payments due to Plaintiff under the Settlement Agreement are inclusive of any taxes that may apply to such payments.

17. It is the Trustee's business judgment that the Settlement Agreement is reasonable and appropriate, and its approval is in the best interest of creditors of the Debtors' estates.

## RELIEF REQUESTED

18. By this Motion, the Trustee respectfully requests that the Bankruptcy Court enter an order, substantially in the form attached hereto, approving the Settlement Agreement and

authorizing the Trustee to take any and all actions as may be necessary and appropriate to implement the terms of the Settlement Agreement.

**<u>BASIS FOR RELIEF REQUESTED</u>**

19. Rule 9019(a) of the Bankruptcy Rules grants the Bankruptcy Court authority to approve settlements of claims and controversies, and section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title."

20. Approval of a proposed compromise and settlement is committed to the sound discretion of the bankruptcy court. *See In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997). The Third Circuit has emphasized that "to minimize litigation and expedite the administration of a bankruptcy estate, '[c]ompromises are favored in bankruptcy.'" *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (*quoting* 9 Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)).

21. Before approving a settlement under Rule 9019(a), a court must determine whether "the compromise is fair, reasonable, and in the interests of the estate." *In re Marvel Entm't Grp., Inc.*, 222 B.R. 243, 249 (D. Del. 1998) (quoting *Louise's*, 211 B.R. at 801). To reach such a determination, the court must assess the value of the claim that is being settled and balance it against the value to the estate of the approval of the settlement. *Martin*, 91 F.3d at 393.

22. Fundamental to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation." *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 425 (1968). The *TMT* rule does not require the Bankruptcy Court to hold a full evidentiary hearing before a compromise can be approved, but rather the Bankruptcy Court's obligation is "to canvas the issues and see whether the settlement 'falls below the lowest point in a range of reasonableness.'" Collier on Bankruptcy at ¶ 9019.2, 9019-4 (quoting *In re Drexel Lambert Grp., Inc.*, 134 B.R. 493 (Bankr.

S.D.N.Y. 1991)); *see Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983), *cert. denied*, 464 U.S. 822 (1983).

23. The proposed settlement of the Estates' claims in the Harbinger Litigation represents a sound exercise of the Trustee's business judgment and is in the best interests of creditors, because it converts a highly contested and uncertain litigation asset into a definite recovery while avoiding the substantial risks, costs, and delays inherent in continued prosecution of the action.

24. Although the Trustee believes the claims have merit, success is not guaranteed. Trade secret and intellectual property disputes are inherently fact-intensive and require extensive expert testimony, motion practice, and a lengthy trial. Even if the Trustee ultimately were to prevail, there remains the risk that damages awarded would be less than anticipated, reduced on appeal, delayed for years through continued litigation and appeals, or unrecoverable. A settlement eliminates these risks and converts a speculative asset into a definite recovery for creditors.

25. A settlement also accelerates the administration of the Estate. Creditors have a strong interest in obtaining distributions as promptly as practicable. Ongoing litigation could delay the resolution of the bankruptcy case for years. A settlement provides liquidity and allows the Trustee to proceed toward a more efficient and timely distribution to creditors.

26. The Trustee's duty is not to pursue litigation at all costs, but rather to exercise sound business judgment in determining whether the expected benefits of continued litigation outweigh the attendant risks and expenses. Where a settlement provides a meaningful recovery that falls within the range of reasonableness and compares favorably to the risks of continued litigation, approval of the compromise advances the Trustee's obligation to maximize value for the Estate.

27. In the Harbinger Litigation, the Harbinger Defendants have vigorously disputed numerous factual allegations underlying the Trustee's claims, all but ensuring that the litigation would have to proceed to trial absent a settlement. However, given the highly contentious nature of the proceedings (as demonstrated in part by the Sanctions Motion and resulting Contempt Motion), it is also fairly certain that there would be extensive briefing in advance of trial in connection with dispositive motions and pretrial and evidentiary motions. Given the nature of the claims asserted by the Trustee in the Harbinger Litigation, the Parties would also need the testimony of expert witnesses, increasing the costs and risk of drawn-out litigation. Without a settlement, the Harbinger Litigation could continue for years, significantly delaying any potential distributions to creditors and preventing the Trustee from fully administering the Debtors' Estates.

28. The Trustee's duty is not to pursue theoretical recoveries at all costs, but rather to maximize value for creditors in an efficient manner. In evaluating a compromise, the relevant inquiry is whether the proposed settlement falls within the range of reasonableness when compared to the uncertainty, expense, and delay associated with continued litigation. Here, the terms of the Settlement Agreement provide for a significant and immediate cash payment from Harbinger that the Trustee can use to fund administration and liquidation of the estate, including the investigation, and potential litigation of other causes of action. Entry into the Settlement Agreement further allows the Parties to settle the Harbinger Litigation without the need for drawn-out, costly, and time-consuming litigation. In his discretion, given the uncertainty and risk associated with the Harbinger Litigation, and weighing the merits of the Trustee's claims against such risks, the Trustee believes entry into the Settlement Agreement is in the best interests of the Debtors' Estates and the creditors thereof.

29. Under this Court's *Order (A) Approving Asset Purchase Agreement and Sale of the Debtor's Assets Pursuant to 11 U.S.C. § 363, and (B) Granting Related Relief* [D.I. 141] and the underlying Asset Purchase Agreement dated March 4, 2025 (the "APA"),[4] entered into by the Trustee and the buyer of substantially all of the Debtors' assets (the "Buyer"), one of numerous assets purchased by the Buyer was a ten percent (10%) share of the Estates' net recovery in the Harbinger Litigation. *See* APA, Section 2.1. Additionally, the Trustee and the Buyer agreed that any settlement of the Harbinger Litigation would require the mutual consent of both the Trustee and the Buyer. *See* APA, Section 7.3. The Buyer was provided notice of the settlement reached by the Trustee and the Harbinger Defendants and has consented to it.

30. In sum, the Settlement Agreement represents a fair, equitable, and reasonable resolution of complex litigation. It appropriately balances the strengths and weaknesses of the Estate's claims and avoids substantial litigation risk, and will accelerate distributions, and maximize the expected value of the Estate for the benefit of creditors. For these reasons, the Trustee respectfully requests for this Court to authorize and approve the Settlement Agreement.

**NOTICE**

31. The Trustee shall promptly serve a copy of this Motion on: (i) counsel to the Debtors; (ii) the U.S. Trustee; (iii) counsel to the Harbinger Defendants; (iv) counsel to the Buyer; and (v) all parties in interest having requested notice to date pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Trustee submits that no other or further notice need be given.

[4] *See* D.I. 51, Ex. A.

## **CONCLUSION**

WHEREFORE, the Trustee respectfully requests that the Bankruptcy Court enter an order in the form attached hereto: (i) approving the Settlement Agreement; (ii) authorizing the Trustee to take such actions as may be necessary or appropriate to implement the terms of the Settlement Agreement; and (iii) granting such other and further relief as is may be just and proper.

Dated: July 8, 2026

COZEN O'CONNOR

*/s/ Mark E. Felger*

Mark E. Felger (No. 3919)
Simon E. Fraser (No. 5335)
Gregory F. Fischer (No. 5269)
1201 N. Market St., Ste. 1001
Wilmington, DE 19801
Telephone: (302) 295-2000
Facsimile: (302) 295-2013
E-mail: mfelger@cozen.com
sfraser@cozen.com
gfischer@cozen.com

*Counsel to Jeoffrey L. Burtch, Chapter 7 Trustee*